JOHN O'CONNOR *vs.* ISAAC ADAMS & another.

Suffolk. March 8. — June 24, 1876. AMES & MORTON, JJ., absent.

In an action of tort for injuries sustained while in the defendants' employ, there was evidence that the plaintiff was twenty years old, and unacquainted with machinery; that, after being employed in shovelling sugar in the warehouse of a sugar refinery, in which there was no machinery except an elevator, he was sent by his foreman into an adjoining room to work upon machines for the drying of sugar, he never having been in a similar employment before; that there were several machines in the room upon a platform raised above the floor; that each machine consisted of a stationary iron cylinder, within which revolved a copper vessel at such velocity as to appear perfectly still, the motion being controlled by a lever within reach of a man standing on the platform; that he was directed by the foreman of the room to go upon the platform and work upon the machines indiscriminately with the other men; that the foreman showed him how to start the machines, and told him to take the sugar out when it turned white, but gave him no other instructions; that he worked during the day upon the machines, but the next morning, having returned to his usual work, refused to go to work upon the machines at the request of the foreman of the machine room; that he was ordered to work upon the machines by the foreman of the warehouse, and did so, but received no new directions; that at the end of the day, having cleaned the machines, he was told by the foreman to go back and clean them again, as they were not half cleaned, and to clean the machines as another man was doing; that he tried so to do, and, while so at work, his arm was caught in one of the machines and torn off; that he was as careful as he could be, and had not been warned of any danger; that it was obvious that the inner cylinder revolved with great rapidity, and that he could see and know that the machines were set in motion by moving the lever in one way and stopped by moving it in the other; that when he returned to clean the ma-

chines, the work of the day was over, and he was not required, unless as above stated, to do the cleansing while the copper vessel was revolving; and that the cleansing could have been performed without putting his hand in a place of danger. *Held*, that the evidence tended to show that the plaintiff was put in a place of peculiar danger, of which he had no knowledge or experience, without informing him of the risks, or instructing him how to avoid them, and should have been submitted to the jury.

TORT for personal injuries.

At the trial in this court, before *Ames*, J., the plaintiff testified that he was a native of Ireland, where he never had any employment, except in farming, and where he had never had any experience with machinery; that on May 12, 1869, two days after he landed in this country, he went to the sugar refinery of the defendants' testator, Seth Adams, to try to get employment, and was hired to work in the warehouse by one Dustin, the general agent or foreman of Adams; that he at once commenced work in the warehouse under Austin, the foreman of the warehouse, and continued to work there every day until August 6, 1869, except that for one day he was sent into one of the other warehouses of the refinery; that there was no machinery in these two warehouses, except an elevator, and that the only work which he did up to August 6 was rolling barrels and shovelling sugar in the warehouses; that on the morning of August 6, Austin came to him and said that McAuliffe, the foreman of an adjoining room, wished for a man to come in there and work on the machines as he was short-handed, and directed him to go with McAuliffe into the room where the machines were, and that he went accordingly; that in the machine room there was an engine, and a platform raised five or six feet from the floor, upon which stood several centrifugal machines for drying sugar; that each centrifugal machine consisted of a large cylinder of wrought iron, being stationary upon the platform, within which was placed a revolving copper vessel, perforated with holes; an iron shaft descended vertically into the copper vessel, and each shaft was connected with a belt which revolved the shaft and the vessel with great velocity, expelling the water from the moist sugar placed in the copper vessel through the perforated holes; that the velocity was such that when the vessel was in full motion it appeared to be perfectly still, and that the motion of each machine was controlled by a handle, in reach

of a man standing upon the platform, by which the connection of the belt with the shaft could be separated; that McAuliffe directed him to go to work upon the machines with the other men, of whom there were two or three for the whole number of machines, besides McAuliffe and himself; that all of the machines were operated together, the men working indiscriminately upon all the machines; that he went upon the platform and continued to work there until nine o'clock in the evening; that when he stood upon the platform his head nearly touched the belts, and that once or twice his hat was knocked from his head by them, and that there was a loud noise in the room from the engine and machinery; that during this day the work consisted in starting the machines after the melted sugar was run into them from the room above, and in stopping the machines after the sugar was dry, when it was shovelled out and removed from below; that McAuliffe showed him how to start the machines, and told him to take out the sugar when it turned white; but that he gave him no other instructions, and said nothing else to him through the day that he remembered, except that he was jawing him and called him several times a " damn fool " and a greenhorn; that during the whole of this day and in the evening the machines were not washed or cleansed, except that after the removal of each charge of sugar a steam-hose was used to remove any substances remaining inside the copper vessel; that the next morning he returned to the warehouse and commenced his usual work, when McAuliffe came to him and directed him to come into the machine room again; that he told him he would not, and that McAuliffe then went to his foreman, Austin, who came to him and asked him to go with McAuliffe; that he replied that he would not, saying that McAuliffe was jawing him and cursing him, and that he did n't wish to go with him; but that Austin ordered him to go, saying that it would only be for one day and then he could come back; that he then went with McAuliffe and resumed the work of the day before upon the centrifugal machines; that he received no new directions from McAuliffe, but that the latter continued to jaw him and swear at him as he had done the day before, and that he worked on with the other men until nearly six o'clock on this day, which was Saturday; that McAuliffe then gave him a cloth and directed him to clean

the machines, and that he did so; and having finished doing this, he was putting on his coat to go home when McAuliffe came to him and told him to go back, saying that the machines were not half cleaned; that the machines were then in motion, having sugar in them which was not yet dry, and that McAuliffe told him to do as one of the other men was doing in cleaning the machines; that he returned to them and tried to do as the other man was doing, and, while so at work with the cloth, his right hand and arm were caught in one of the machines and his arm was torn off, leaving only a few inches of the bone protruding from the socket; that at the time of the accident he was as careful as he could be; that he had not been warned of any danger about the machines by anybody, nor had he received any instruction as to his work, except as above stated; and that at the time of the accident he was aged twenty years and a few months.

Alexander Austin, called by the plaintiff, testified that he was the foreman of the warehouse at the time of the accident; that McAuliffe called upon him for a man to go into the machine room and work upon the machines, and that he sent the plaintiff because he was not so smart as the other men were, and he thought it would be easier for him.

It was admitted by the defendants that their testator was the owner of the sugar refinery at the time of the accident, and was then operating the same, and that McAuliffe and Austin were his agents in the prosecution of his business.

It was shown that it was obvious and apparent to the sight that the inner cylinder when the machinery was in motion revolved with extreme rapidity. There was no evidence that the washing required to be done by the plaintiff could not have been effectually done while the machinery was at rest; and the plaintiff had ample opportunity to see and know that the machinery was set in motion by pulling a lever, and stopped by moving the same lever in the other direction. The work for the day was over, with the exception of the washing, and the plaintiff was not directed or required, unless as herein stated, to do that washing while the inner cylinder was revolving; and the washing could have been performed without putting his hand in a place of danger.

This was substantially all the evidence offered by the plaintiff, except upon the question of damages, and at the close of the plaintiff's evidence the judge, at the defendants' request, ruled that there was no evidence upon which the action could be maintained, and directed a verdict for the defendants; and reported the case for the consideration of the full court. If the ruling was incorrect, the verdict was to be set aside and the case to stand for trial; otherwise, judgment on the verdict.

*M. Williams, Jr.*, for the plaintiff.

*C. A. Welch*, for the defendants.

ENDICOTT, J. Upon a careful examination of the report, the court is of opinion that there was evidence tending to show that the defendants' agents put the plaintiff in a place of peculiar danger, of which he had no knowledge or experience, without informing him of the risks, or instructing him how to avoid them. That question was proper to be submitted to the jury, together with the question whether the plaintiff was in the exercise of due care at the time.

The duty of an employer to take proper precautions for the safety of a person employed in running or tending machinery, especially when such person, through youth, inexperience or want of capacity, may be unable to appreciate or avoid the danger to which he is exposed, is fully considered in *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572. It was there held that if the jury were satisfied that the defendant knew the peril to which the plaintiff would be exposed, and did not give him sufficient or reasonable notice of it, and he, without negligence on his part, through inexperience or reliance on the directions given, failed to perceive or understand the risk and was injured, the defendant would be responsible. The principal cases, both in this Commonwealth and in England, are commented upon in the opinion of Mr. Justice Hoar, and it is unnecessary to review them again. See also *Sullivan* v. *India Manufacturing Co.* 113 Mass. 396; *Railroad Co.* v. *Fort*, 17 Wall. 553.

*Case to stand for trial.*