MARY E. SMITH, ADMINISTRATRIX, v. THE PENINSULAR CAR WORKS.

*Manufacturing institutions—Duty of proprietor to furnish suitable place for performance of work by employee—Foreman presumed to know the dangers incident to the business carried on—Should inform employee of latent risks he is not likely to know from inexperience, or incapacity of understanding and appreciating same—Such duty not performed by general statement "that business is dangerous"—Employee should be informed of perils of particular place—Or of extraordinary risks to be encountered, where known—Not responsible for injury resulting from dangers readily seen by common observation—Employee assumes these risks—Where knowledge of scientific facts is required to avoid danger, or it is the result of well-known chemical combinations, rule first stated applies—If employee not shown to have received notice; or that he had knowledge of perils incident to his employment, he cannot be charged with contributory negligence in case of injury.*

1. The law is well settled that in large manufacturing institutions the proprietors or masters are bound to furnish a suitable *place* in which work may be performed with a reasonable degree of safety to the persons employed, and without exposure to dangers that do not come within the obvious scope of the employment in the business as usually carried on. (See authorities cited in opinion, page 504.)

2. It is presumed that the master or foreman placed in charge of and conducting a manufacturing business *knows* and is familiar with the dangers, latent and patent, ordinarily accompanying that business; and if there are *latent* risks that a servant is, from ignorance or inexperience, incapable of understanding and appreciating, or which he would not be likely to know, the master should inform him of such dangers. (Id. page 504.)

3. Such duty would not be discharged by informing the servant generally that the service engaged in is dangerous, especially where he is a person who neither by experience nor education has, or would be likely to have, knowledge of such facts; but the servant should be informed, not only that the service is dangerous, and of the perils of a particular place, but where extraordinary risks are or may be encountered, if *known* to the master, or *should* be known by him, the servant should be warned of *these*, their character and extent, as far as possible. The value of human life, and the duty of the master in affording reasonable protection to persons while under his direction, cannot be held to require less than this. (Id. page 505.)

| | |
|---|---|
| 60 | 501 |
| 61 | 257 |
| 61 | 593 |
| 62 | 391 |
| 60 | 501 |
| 78 | 503 |
| 60 | 501 |
| 81 | 555 |
| 60 | 501 |
| 97 | 339 |
| 60 | 501 |
| 104 | 614 |
| 60 | 501 |
| 106 | 612 |
| 60 | 501 |
| 107 | 601 |
| 108 | 12 |
| 60 | 501 |
| 123 | 404 |
| 123 | 410 |
| 60 | 501 |
| d126 | 432 |
| 60 | 501 |
| s27NW | 662 |
| s1ASR | 542n |
| 130 | 310 |
| j130 | ³311 |
| j130 | ³312 |
| 60 | 501 |
| s27NW | 662 |
| s1ASR | 542n |
| d133 | ⁴293 |
| j133 | ²301 |
| 60 | 501 |
| a137 | ⁰ 87 |
| 60 | 501 |
| c147 | 463 |
| 60 | 501 |
| 153 | ⁶ 36 |
| 153 | ⁶ 37 |

4. An employer is not responsible to the servant for an injury resulting from those dangers which are the subject of *common* knowledge, or which can be readily seen by *common* observation. Such risks are always assumed by the servant; but when in order to avoid the danger a knowledge of scientific facts is required, or it is the result of well-known chemical combinations among educated men, the rule first stated applies with much force, and cannot be ignored.

5. The fact that laborers in a manufacturing establishment "whistle and sing," or "laugh and talk and are full of fun," while in the performance of their work, does not tend to show any negligence or carelessness on their part, but is rather indicative of good nature and a happy disposition.

6. In the absence of testimony showing the proper notice given by the agent in charge, or knowledge on the part of the servant of the perils and risks, ordinary and extraordinary, incident to his employment, contributory negligence cannot be charged to the servant in case of injury; nor can he be said to have assumed all such risks and perils. (Id. page 508.)

Error to Superior Court of Detroit. (Chipman, J.) Argued February 4, 1886. Decided April 15, 1886.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Sumner Collins* and *Chas. B. Lothrop*, for appellant.

[The citations in the brief of appellant's counsel, being fully covered by those in the majority opinion, are omitted. REPORTER.]

*C. A. Kent*, for defendant:

It is well settled that a master is not responsible for injuries when the risk is open and voluntarily assumed: Cooley on Torts, p. 551.

SHERWOOD, J. The plaintiff's intestate, Adelbert A. Smith, was her husband.

He was a laborer, and worked for the defendant during the year 1882, and until he died, in January, 1883. His business was principally that of a moulder, and he worked in the defendant's shop at Adrian. The work of moulding and carrying molten iron was ordinarily done in two rooms

separate from each other, each being furnished with all appliances for melting iron and moulding.

On the day in question, the fires had gone out in the room in which deceased was employed, and he was ordered by the foreman, who had entire charge of the men, to go with two others to get a ladle of iron from the other room, and bring it into the room where he was employed. To do this it was necessary to go out of doors, and into the open air.. On this day the ground over which it was necessary to pass was covered with ice, and water standing on the ice, making it very slippery, and there was no other way to get this iron.

On returning, and while passing over the ice, the man in the rear slipped down, and the molten iron was brought into contact with the water and ice, from which a violent explosion ensued, and deceased was, with one of the others, so injured that they died shortly afterwards, having made no statement of the manner and cause of the accident, and there was no eye-witness to the accident but the man who slipped down. The undisputed testimony was that deceased was a good and careful man.

The suit is for damages arising out of Smith's death. The negligence charged against defendant is that the passage-way was not safe, and that Smith was not notified of the danger arising from the contact of molten iron with ice or water.

Plaintiff's claim is that this was not a proper and suitable place to perform deceased's labor, and that the danger of an explosion from contact of ice with molten iron was a latent danger of which deceased was ignorant, and one not within the usual hazards of the employment, and that defendant was guilty of negligence in sending him to do work in such a place, and in not informing him of the danger of a passage over the icy way with the molten iron. The defense is that the passage-way was safe; that its dangers were open, and were voluntarily assumed; that Smith was as likely to know as defendant's managers of the effect of the meeting of molten iron with water or ice; and, lastly, that the proof shows that Smith's death resulted from his own carelessness and that of Ray. When the plaintiff rested, the court below

directed a verdict for defendant. There are several exceptions as to the rejection of testimony, but the main question is on the charge of the court directing the verdict.

When the case was heard, my impressions favored the ruling made by the judge of the superior court, but a careful examination of the record, and more thorough investigation of the case, has very essentially modified those impressions. Indeed, I think the facts and circumstances stated by the witnesses, under the law applicable thereto, required the case to go to the jury.

It has come to be very well settled that in large manufacturing institutions, like that of the defendant, the proprietors or masters are bound to furnish a suitable place in which work may be performed with a reasonable degree of safety to the persons employed, and without exposure to dangers that do not come within the obvious scope of the employment in the business as usually carried on : *Swoboda v. Ward*, 40 Mich. 423 ; *Huizega v. Cutler & Savidge Lumber Co.*, 51 Mich. 272 ; *Coombs v. New Bedford Cordage Co.*, 102 Mass. 572 ; *Parkhurst v. Johnson*, 50 Mich. 70 ; *Smith v. Oxford Iron Co.*, 42 N. J. Law, 467 ; *Baker v. Allegheny Valley R. Co.*, 95 Penn. St. 211 ; Cooley Torts, 553.

It is presumed that the master or foreman placed in charge of and conducting a manufacturing business knows and is familiar with the dangers, latent and patent, ordinarily accompanying that business ; and if there are latent risks that a servant is, from ignorance or inexperience, not capable of understanding and appreciating, or which he would not be likely to know, the master should inform him of such dangers : Whart. Neg. § 209 ; *Coombs v. New Bedford Cordage Co.*, 102 Mass. 584 ; Cooley Torts, 549 ; 2 Thomp. Neg. 979 ; *Strahlendorf v. Rosenthal*, 30 Wis. 675 ; *O'Connor v. Adams*, 120 Mass. 427 ; *McGowan v. La Plata Min. Co.*, 3 McCrary (U. S.) 397 ; *Dowling v. Girard B. Allen Co.*, 14 Cent. Law J. 92 ; *Hathaway v. Michigan Cent. R. R. Co.*, 51 Mich. 253 ; *St. Louis & S. E. Ry. Co. v. Valirius*, 56 Ind. 511 ; Wood Mast. & Serv. § 349 ; *Michigan Cent. R. R. Co. v. Smithson*, 45 Mich. 212 ; *Chicago & N. W. Ry. Co.*

*v. Bayfield*, 37 Mich. 205; *O'Connor v. Adams*, 120 Mass. 427.

I do not understand that the obligation of the defendant would be discharged by informing the servant generally that the service engaged in is dangerous; especially where the servant is a person who neither by experience nor education has, or would be likely to have, any knowledge of the perils of the business, either latent or patent, but that in such case the servant should be informed, not only that the service is dangerous, and of the perils of a particular place, but where extraordinary risks are or may be encountered, if known to the master, or should be known by him, the servant should be warned of these, their character and extent, so far as possible. It seems to me the value of human life, and the duty of the master in affording reasonable protection to persons while under his direction, cannot be held to require less than this: Cooley Torts, 554; *Coombs v. New Bedford Cordage Co.*, 102 Mass. 572, 596; *E. Saginaw City Ry. Co. v. Bohn*, 27 Mich. 503; *Union Pac. Railroad Co. v. Fort*, 17 Wall. 553.

Of course, this rule would not require the employer to become responsible to the servant for any injury he might receive, while in the employment of the master, resulting from those dangers which are the subject of common knowledge, or which can be readily seen by common observation. Such risks, and the danger therefrom, are always assumed by the servant when he engages in the service; but when the danger to be avoided requires a knowledge of scientific facts, or is the result of well-known chemical combinations among well-educated men, then I think the rule applies with much force, and cannot be ignored.

I do not think the court can presume that the common laborer in a foundry or machine-shop, such as this was, is possessed of the scientific knowledge necessary to enable him to comprehend and avoid any such danger as overtook Mr. Smith on that icy way, resulting in his death; and I think, before he was called upon to perform the hazardous undertaking by Mr. Hoban, the foreman in charge, he should have

been informed somewhat of its dangerous character. This, however, was not done, and there is no pretense that the death of Mr. Smith was not caused by the explosion which followed the contact of the molten iron with the water and ice covering the dangerous passage over which the same was required to be carried.

And I think it may safely be said that, had Smith known of the dangerous character of the service arising from the accidental contact of the water and ice with the melted iron, he, in all probability, would have refused to perform the service required. I know it is said he passed over the icy track but a few moments before the accident occurred, and did so safely, and must have observed the danger of falling. Conceding this, and that he was willing to take the risk of such danger, he certainly (if he did not know that the molten iron cast upon the water and ice would cause an explosion) could not have consented to take the risk of a fatal explosion. This was the danger he was subjected to in obeying the command of his employer, and of which he had no notice or knowledge, as is claimed by the plaintiff, and it is the neglect of the company, or its foreman, to notify the servant of such latent danger that she (plaintiff) makes the basis of her suit in this case.

The suggestion of the foreman to the men carrying the molten iron, that they worked or were going too fast, was no notice that if they allowed the water and ice to come in contact with the molten iron there would be danger of a terrific and perhaps fatal explosion. The testimony showed that Smith was a good workman and a careful hand. I do not think, because these men whistled and sang, " or were laughing and talking and full of fun " while in the performance of this work, this tended to show any negligence or carelessness on their part, but was rather indicative of the good nature and happy disposition of these servants. The law requires no such strained construction of the indications of the better feelings of our nature to excuse actionable negligence when accompanied with liability.

It is also suggested that it was as much the duty of Smith

to have made the way safe over which the iron was carried as it was of any one. I do not so understand the law applicable to the facts contained in the record. Smith was under the direction of the foreman in all that he did, and the record does not show that he had any authority to clear this way of ice, or cover it with some other material. It was the duty of the foreman to know of its condition and safety before sending these parties over it. Smith had never carried molten iron over it before. It was not really the department in which he worked. It nowhere appears that the manner in which the iron was carried, or the neglect of any duty devolving upon Smith, was the occasion of his slipping upon the ice.

Was there any negligence shown, or was there any testimony reasonably tending to show, that the defendant was guilty of negligence in the matter?

It is true, if the plaintiff's intestate had knowledge of all the facts, or had notice of all the facts, resulting in the fatal danger, before the accident occurred, then the plaintiff could not recover; but, as I have before said, he cannot be presumed to have known them under the testimony in this case, and certainly the record does not show that the defendant ever gave him any information upon the subject.

I think it was the duty of the defendant, by its agent or foreman, to have informed Smith of the dangerous character of the service, and it was incumbent upon the defendant to show that Smith had knowledge or notice of such extraordinary danger,—a danger not liable to exist or be incurred in carrying on the work which he was engaged to perform in the usual place and in the usual manner; and if the agent in charge had not such knowledge, or was not qualified to give such information to the servant, the defendant was guilty of negligence in not furnishing a foreman with the proper qualifications for the position.

In the absence of testimony showing the proper notice given by the agent in charge, or knowledge on the part of the servant, it is difficult to perceive how Smith could be said to be guilty of contributory negligence, or how he could be

said to have assumed all the risks and perils, ordinary and extraordinary, incident to the employment: *McGowan v. La Plata Min. Co.*, 3 McCrary (U. S.) 397; *Kibele v. Philadelphia*, 105 Penn. St. 41; *Gilmore v. Northern Pac. Ry. Co.*, 9 Sawyer, 558; *Spelman v. Fisher Iron Co.*, 56 Barb. 151; *Parkhurst v. Johnson*, 50 Mich. 70; *Smith v. Oxford Iron Co.*, 42 N. J. Law, 475; Wood Master and Servant, 749; *Ford v. Fitchburg R. Co.*, 110 Mass. 240; *Fuller v. Jewett*, 80 N. Y. 46; *Wright v. New York Cent. R. R. Co.*, 25 N. Y. 569; *Greene v. Minneapolis & St. L. R. Co.*, 31 Minn. 248; *Wabash Ry. Co. v. McDaniels*, 107 U. S. 454; *Hough v. T. & P. Railway Co.*, 100 U. S. 214; *Corcoran v. Holbrook*, 59 N. Y. 517; *Teipel v. Hilsendegen*, 44 Mich. 461; *Billings v. Breinig*, 45 Mich. 71.

The facts from which contributory negligence are proper to be inferred ought to have been submitted to the jury, and there was testimony from which the jury might have found defendant guilty of negligence, and the court should have left both questions to the jury.

These views render the consideration of the other assignments of error unnecessary.

The judgment must be reversed, and a new trial granted.

CHAMPLIN and MORSE, JJ. concurred.

CAMPBELL, C. J. dissenting. I do not think this case presents any ground of recovery. The only point which seems to me to be of any legal importance is whether the defendant was responsible, at all events, for not seeing that there should be no ice on the path over which the decedent and the other workmen passed with the melted metal. The particular danger of explosion, if melted metal should come in contact with water, is the same that would exist anywhere, inside or outside of the building, with water as well as with ice. It is one of those dangers incident to all foundries which all persons of any experience in such employment must be presumed to have sufficient understanding to avoid. But in this case I cannot see that it differs, except perhaps in degree,

from the other and palpable dangers which a slip or fall, when carrying such material over any slippery place, must almost inevitably bring about. A fall on the ice is very likely at any time to cause serious injury to a grown-up person, and a fall which will spill hot iron over him can hardly fail to produce very dangerous results to life and limb. The fact that risks may differ in extent, when all are of similar danger to personal security, cannot change the rule of diligence on either side.

It cannot be said that the foreman knew, any better than the deceased, that ice was liable to cause slipping, or that a slip on it with such a burden would probably be a serious matter. The risk was open to any observation. Neither could it be supposed that it needed any special knowledge to discover it in broad daylight, or to expect its possibility in such weather. No workman is expected or bound, unless he chooses, to incur any serious danger without remonstrance, or any use of means to avoid it; and where any one deliberately chooses to go over a path which is as easily seen by him as it could be by any one else, then he must be responsible himself for an accident arising out of its condition, unless there is such a positive duty in his employer to provide an absolutely safe path as to relieve him from any obligation to look where he is going.

To require such extreme care on the one side, and to allow such blind reliance on the other, would introduce into the law rules which go beyond reason. The rule that a safe place of employment must be furnished is one which cannot go so far without destroying all safety to employers themselves. It is a sensible and proper rule in cases where the place and its surroundings are not open to the knowledge of all persons employed; but it can have no application to things where everybody has the same opportunity of judgment, and no peculiar knowledge or experience is involved.

No rule can be a safe one which will render it unsafe for persons to employ others to aid them. The cases that generally come up arise where employment is upon a considerable scale, and it is supposed the employer can afford to lose better

than the person employed. But the principle, if correct, will apply just as forcibly to domestic service and small industries as to any other. An errand to the barn or wood-pile over an icy path involves the same kind of danger as an errand anywhere else. It will not do to look at the large cases and not at the smaller ones. The loss and damage, when it occurs, is no greater and no less by reason of the nature of the employment or the extent of the business. It would ruin any small business to pay such damages, and it would shock common sense to require it. The ordinary risks of business, and the ordinary duties springing from it, must go together.

I think that the deceased could not, nor can his representatives, sue for an injury arising out of his falling on a path such as appears to have been the cause of this accident.