RICHARD HYSELL, Respondent, v. SWIFT & COMPANY,
Appellant.

Kansas City Court of Appeals, January 2, 1899.

| 78 | 39 |
| 84 | 447 |
| 78 | 39 |
| 93 | 4275 |
| 78 | 39 |
| 95 | 1231 |

1. **Master and Servant:** COMMUNICATING KNOWLEDGE OF DANGER:
   HIDDEN DEFECTS. If the master knows of, or could by reasonable
   diligence know of, hidden danger arising from the nature of the
   work or defective appliances, he must communicate such knowledge
   to the servant.

2. ————: ————: SCIENTIFIC DEVELOPMENT. The master must keep
   pace with scientific development as it affects his business and keep
   himself and his foreman informed of latent danger, even though it be
   scientific information, if it be readily attainable. Cases considered
   and discussed.

3. ———: BACTERIA: INJURY TO SERVANT FROM: MASTER NOT LIABLE.
   But an accident caused by bacteria, germinated from animal matter
   in a beef packing house, which, floating in the atmosphere, lodged in
   an employee's eye and destroyed the sight, is not such an accident
   for which the master can be held liable.

4. ———: ———: REMOTE CONTINGENCY: POISONED. When an injury
   can not reasonably be anticipated and would not have happened ex-
   cept under exceptionable circumstances, it is not necessary to take
   precautionary measures to prevent it, although if taken the injury
   would not have resulted. This principle is applied to the loss of an
   eye poisoned by bacteria in iron rust while the servant was cleaning
   an iron rail in a packing establishment, and the master is held not
   liable on the ground of the exceptionable nature of the accident.

*Appeal from the Jackson Circuit Court.*—HON. J. H.
SLOVER, Judge.

REVERSED.

AMOS H. KAGY and J. H. BREMERMANN for appellant.

(1) The court erred in refusing to take the case from
the jury at the close of plaintiff's evidence, and at the close
of all the evidence, for the reason that plaintiff made no
case for the jury and it was the duty of the court to so de-
clare. Herdler v. Stove Co., 136 Mo. 15; Irmer v. Brewing
Co., 69 Mo. App. 17; Bullmaster v. St. Joseph, 70 Mo. App.
60; Marshall v. Hay Press Co., 69 Mo. App. 256; Bender v.
Railway, 137 Mo. 245; Lawless v. Gas Light Co., 72 Mo.
App. 679; Breen v. Cooperage Co., 50 Mo. App.
203; Fuchs v. St. Louis, 133 Mo. 201; Railroad v. Eliot,
5 C. C. A. 368; Boyd v. Graham, 5 Mo. App. 403;
Shea v. Railroad, Mo. App. Rep., No. 1, p. 478; Ket-
tering v. Railroad, 62 Iowa, 285; Deane v. Fork Light &
Power Co., 39 Pac. Rep. 346; Sullivan v. Railway, 133 Mo.

1; Brewing Ass'n v. Talbot, 141 Mo. 674; Wood's Master & Servant [1 Ed.], sec. 382; Jewett v. Railway, 50 Mo. App. 551; Murray v. Railway, 11 Colo. 124; Read v. Railway, 3 Ambeg. Repts., p. 500; Hoepper v. Hotel Co., 142 Mo. 378; Railway v. Elliott, 149 U. S. 271; Railway v. Barrett, 166 U. S. 617; Pollock on Torts; Ray on Negligence, 133, 134. (2) It is well settled that the law presumes that the master has performed his duty and the servant has upon him the burden of proof to overcome this presumption. Jewett v. Railway, 50 Mo. App. 547; Wood's Master & Servant [1 Ed.], sec. 284; Murray v. Railway, 11 Colo. 124.

CHAS. B. ADAMS and WASH ADAMS for respondent.

(1) As to latent dangers, growing out of the conduct of the business in which the servant is engaged, he is entitled to have such dangers explained to him, and for any failure in this regard, when the injury ensues, the master is liable. 2 Thompson on Negligence, 980, 994; 14 Am. and Eng. Ency. of Law, 897; Rillston v. Mather, 44 Fed. Rep. 743; s. c., 156 U. S. 399; Smith v. Car Works, 60 Mich. 501; Parkhurst v. Johnson, 50 Mich. 70; Tax. v. White, 48 N. W. Rep. 203; s. c., 84 Mich. 676; McGowan v. Mining Co., 9 Fed. Rep. 861; Bailey's Master's Liability for Injuries to Servants, pp. 111, 112, 125; LaFrano v. Water Co., 55 Hun. 452; Smith v. Iron Co., 42 N. J. L. 467; Fuchs v. St. Louis, 133 Mo. 168; Whittaker's Smith on Neg., p. 130, and authorities cited; O'Connor v. Adams, 120 Mass. 430; Baxter v. Roberts, 44 Cal. 187; Keegan v. Kavanaugh, 62 Mo. 232; Davies v. England, 33 L. J. (N. S.) 321; Wharton on Neg., sec. 210; Swift & Co. v. Fue, 66 Ill. App. 651; Holloran v. Foundry Co., 133 Mo. 470. (2) The question of negligence under all the facts and circumstances in evidence

was a question of fact for the jury and this court is bound by the verdict. O'Mellia v. Railroad, 115 Mo. 221; Railway v. Ives, 144 U. S. 417; Wharton on Negligence, sec. 243; Wood v. Railway, 23 Ill. App. 370. (3) "When the appellant itself has asked the judgment of the jury upon a given issue it will not afterwards be heard to challenge the verdict on the ground that the issue was improperly submitted to them." Berkson v. Cable Co., 45 S. W. Rep. 1121; Vinegar Co. v. Guggemos, 98 Mo. 398. (4) He who has knowledge of facts sufficient to put him upon inquiry, is chargeable with notice of the fact which such inquiry would disclose. Eyerman v. Bank, 84 Mo. 408; Reilly v. Railroad, 94 Mo. 608. (5) One method of establishing notice or knowledge of a fact is by proving the notoriety or publicity of such fact. Crane v. Railway, 87 Mo. 588; Reilly v. Railroad, 94 Mo. 608.

ELLISON, J.—This is an action for personal injury in which plaintiff obtained judgment in the circuit court in the sum of $2,000 for the loss of an eye caused by poison.

Defendant is a large slaughtering and packing establishment and removed beeves from the killing to the cleaning department by means of hooks attached to a grooved iron wheel which ran on a large iron rail suspended from the ceiling, about fourteen feet above the floor. STATEMENT. The hooks are hitched into the hind legs of the dead animal, which is then hoisted up till it clears the floor and is run into the cleaning room by means of the wheel running along the iron rail. It seems that in order to fasten the hooks in the legs of the animal, the wheel and hooks both drop to the floor, and in that manner the wheel comes in contact with blood and other matter from the animal which is, in that way, carried to the iron rail above. That such matter adheres to the rail, decays and

forms, what witnesses called, a yellowish rust, which is alleged to be poisonous and a particle of which falling in plaintiff's eye caused its loss.  It becomes so thick on the rail as to require to be cleaned.  To clean the rail, defendant's foreman had boards laid under it on what are known as "wooden horses;" and employees would get on these boards where they could reach the rail and by means of a steel brush clean off the matter aforesaid.  Plaintiff was an ordinary day laborer, with slight education and had not been a workman in that department, but was taken from his ordinary duties by defendant and set to work, in company with fifteen others, cleaning the rail, and in doing so a particle of this matter or dust dropped into his eye, as just stated, and so poisoned it as to cause its loss.  It was shown in evidence by scientific experts that bacteria will form or breed in decayed matter of this character which causes it to be poisonous, and to have such hurtful tendency as to be capable of destroying the eyesight if brought into contact with the eye; that such animalculae were in the matter on the rail.

Defendant contends that it was not guilty of negligence and is not responsible for the accident.  Plaintiff's contention is not that defendant knew the fact established by experts that decayed matter of the kind described would produce poisonous bacteria, but that if defendant had been ordinarily prudent and careful it would have become informed of that scientific fact, and would have warned plaintiff of the danger and provided him with glasses to protect his eyes.

The case concedes that plaintiff did not know of the danger attendant upon such work.

The duty which the master owes the servant to provide him a safe place to work and to protect him from latent dangers has been so often stated at length by the appellate

courts of this state that we will confine our-
selves to a mere statement of the rule

MASTER and
servant: com-
municating
knowledge of
danger: hidden
defects.

without discussing the authorities. The rule is
that if the work be attended by hidden danger
arising either from the nature of the work, or
from defective appliances, in either case known
to the master he must communicate this knowl-
edge to the servant. That if the master does not know
of such danger, but by the care which an ordinarily prudent
man would exercise under the same circumstances, he could
have known, then he is chargeable as if he, in fact, did know.

In this case it was not directly shown that defendant
had knowledge of the substance on the rail being poisonous,
or that the work of cleaning the rail was attended with any
hazard. Plaintiff has confined himself to an effort to show

——: ——: scien-
tific develop-
ment.

that substance of the character of that on the
rail was so long and well known among scien-
tists to produce poisonous bacteria, that it had
become a matter of common knowledge among
ordinarily well informed persons; and that
therefore if defendant did not know of such

fact, it should have known it. We hold that a master must
keep pace with scientific development and knowledge as
it may affect the character of business in which he is en-
gaged. It is said that he will be presumed to have such
knowledge, and that if the foreman in charge of the danger-
ous work has not such knowledge, the master is guilty of
negligence in not providing a foreman who has. Smith v.
Car Works, 60 Mich. 501. It is the master's duty to be-
come informed of the latent danger, Smith v. Iron Co., 42
N. J. L. 467, even though it be scientific information, if it
be readily attainable.

"Occupations, however important, which can not be
conducted without necessary danger to life, body or limb,
should not be prosecuted at all without all reasonable pre-

cautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguards. Indeed, we think it may be laid down as a legal principle, that in all occupations which are attended with great and unusual danger there must be used all appliances readily attainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence. If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be taken by the promoters of the pursuit or employers of laborers thereon. Liability for injuries following a disregard of such precautions will otherwise be incurred, and this fact should not be lost sight of. So, too, if persons engaged in dangerous occupations are not informed of the accompanying dangers by the promoters thereof, or by the employers of laborers thereon, and such laborers remain in ignorance of the dangers and suffer in consequence, the employers will also be chargeable for the injuries sustained. Both of these positions should be borne constantly in mind by those who engage laborers or agents in dangerous occupations, and by the laborers themselves as reminders of the duty owing to them. These two conditions of liability of parties employing laborers in hazardous occupations are of the highest importance and should be in all cases strictly enforced." Mather v. Rillston, 156 U. S. 391.

In Smith v. Car Works, *supra,* the servant with another was directed to carry molten iron from one room to another along an icy path on the outside of the building. In doing so, his companion slipped and fell on the ice, precipitating the iron on the ice causing an explosion and scattering the melted iron on the servant from the effect of which he died. The court held that while the servant must have had the common knowledge that ice was slippery and dangerous to

walk upon, yet as he did not know of the fact that an explosion would follow the contact of melted metal with water or ice, it was the master's duty to have warned him and in failing to do so was guilty of negligence. In Smith v. Iron Company, *supra,* the service was mining. Ordinary blasting powder had been used, when the master concluded to introduce a more dangerous explosive and one requiring further knowledge and different handling from that of ordinary blasting powder, known as giant powder. The court said, that, before allowing the new compound to be used it was the duty of the master to have *ascertained* and made known to the servant its danger and the mode of using it. That it was negligence to furnish such an article without the requisite information to those who were to use it. And that whether the master was aware of its dangerous quality, *or furnished it without having obtained such information it was equally liable.*

The case found in 156 U. S., *supra,* approving opinion of Severeus, J., of the federal circuit, 44 Fed. Rep. 743, was where a servant was injured by the explosion of dynamite and exploders, or fulminating caps, caused by exposure to too much heat, or to excessive jarring of the building by the machinery in use.

In the case of Fox v. Peninsular Works, 84 Mich. 676, a laborer sued a manufacturer of Paris green for injuries to his health caused by inhaling vapors arising in the process of manufacture, which is done by placing a mass of poisonous ingredients in a large vat and bringing it to a high degree of heat. The defendant was held liable for failing to inform plaintiff of the danger of inhaling such vapors. On this point the court said:

"A man might know that Paris green was a poison if taken internally, but not know that it would cause pustulation by handling, or be absorbed into the system and cause poisonous effects from contact with the outer surface of

the body. It was the duty of the defendant not only to inform the plaintiff that it was a poison, but of the effect it might produce to one working in its manufacture without taking due precaution, and the precaution necessary to be taken should have been pointed out if known to defendant and all proper and reasonable appliances and facilities provided to guard against the dangers to be encountered in the employment. Then the person taking the employment would assume the risk of it."

We think, therefore, that whether judged by the accepted rule making it the master's duty to provide a reasonably safe place for his servant to work, and reasonably safe appliances to guard him, as well as may be, from the dangers of his employment; or whether judged by the current of authority applying the rule to a variety of uncommon cases, it may be safely said that it is the duty of the employer to become informed of those matters of scientific knowledge possessed by men of general education and information relative to the danger and hazard of, the business in which he is engaged. That he should give information of the danger to his uninformed employees, and should provide them with reasonably safe appliances for protection. And it is negligence to fail to comply with such duty.

But when injury is unlikely to follow lack of the information just referred to; when it can not reasonably be expected to follow; when the chance of injury on account of lack of information is remote and could not reasonably have been anticipated and would not have happened unless in exceptionable circumstances, then a failure to provide against a resulting injury is not negligence. It is said:

——: bacteria: injury to servant from: master not liable.

"That which never happened before, and which in its character is such as not to naturally occur to prudent men, to guard against its happening at all, can not, when in course of years it does happen, furnish good ground for a

charge of negligence in not foreseeing its possible happening and guarding against that remote contingency." Hubbell v. Yonkers, 104 N. Y. 434; Jogsen v. Hall, 53 Mich. 274; Nelson v. Railroad, 30 Minn. 74.

In Mfg. Co. v. McCormick, 118 Pa. St. 519, a servant was engaged in painting the inside of a tank twelve feet deep. He had a lamp and a can of paint. An explosion occurred which injured him. It is supposed the explosion was occasioned by the quantity of benzine in the paint evaporating and filling the tank with explosive gas. The court said that, "the accident happening under such circumstances was outside the range of ordinary experience, and one, therefore, against which the measure of care due from the employer could not protect the servant," unless the employer is to be considered an insurer. See also as bearing on the question O'Malley v. Railway, 113 Mo. 319. In the recent case of Hoepper v. Southern Hotel, 142 Mo. 378, it is said that a neglect to anticipate and guard against that which no reasonable man would expect to occur would not be negligence upon which an action could be based.

We are of the opinion that an application of this principle of law to the case before us exculpates defendant and causes a reversal of the judgment. The testimony of experts shows that the injury to plaintiff's eye was caused by bacteria, a poisonous live object germinated in the decayed matter which had formed on the rail along which the carcasses of animals were propelled, as already described; that one or more of these lodged in plaintiff's eye while he was at work cleaning the rail. It was shown that this substance on the rail when brushed off was a yellowish dust, which fell and settled about, among other places, over plaintiff's clothing and on his face and hands and also over the fifteen or sixteen other persons engaged in the same service. This dust necessarily floated in and through the room and building. It was doubtless inhaled through the mouth or

nose of, not only those immediately engaged in the work, but many of the large number of defendant's other employees. It only harmed plaintiff. It is not shown that in all the cleaning of such matter from similar places, or from any place, that bacteria had found lodgment and worked injury to any one. The same testimony relied upon to make out plaintiff's case shows that these live objects or germs are so small and so light that large numbers of them may be in a single drop of liquid; that they can take hold of and work havoc in a membraneous substance like the human eye, or nose, or mouth. So that when we consider that such substance as was on this rail exists in different forms in, perhaps, every part of the earth, that it is being disturbed by persons and animals and the winds, we readily see that the atmosphere in the vicinity must be filled with them and that they are getting into the eye or the nose of all who may be in their reach. And yet men do not provide themselves with sponges for the nose or mouth and goggles for the eyes that these objects may be kept out. When they do find lodgment *and work injury* to a human being, it is by the merest chance; otherwise the race would be in danger of destruction. It must be true that the human organization is such that it neutralizes the harmful results from these microscopic animals, except in rare instances. Their harmful effect is simply one of the remote chances which we take for existence. It is now stated by scientists that tuberculosis is caused by live germs and that they are discoverable in the sputa of the one afflicted. This is expectorated by such persons and when it has become dry and powdered can get into the atmosphere and thence be taken into the lungs of other human beings. It is said by many of the learned that the disease *may* be contracted in this way. Yet would a master who had in his employ a person so afflicted, be required to warn his other servants of the danger, a danger existing, as experts state, yet so remote as

to cause the fact to be questioned? Some particles of the substance, in defendant's packing house, from which these living organisms spring must be found in crevices in different parts of any packing house, especially in the floor. When the floor is swept the germs must rise in the atmosphere and find lodgment in the nose or eye of employees; and yet it would scarcely be contended that for a harmful result which might occur, traceable by experts to bacteria, the master would be liable. Uninformed and uneducated men are employed to work in and near marshes and stagnant water, in sewers and other places where disease breeding microscopic animals are said to thrive, yet it is not believed that the master furnishes protection against inhaling these.

I do not question but that a master may put his servant to work where he would come in contact with disease (a disease communicated by germs) for the doing of which he would be liable for the resulting injury, but it would be in such instances where it is well known that the disease would probably be communicated, and not where the injurious result is so remote as to scarcely engage one's attention. If a master should knowingly engage his child servant in a place where he would come in contact with contageous diseases common to children, he would be liable for the injurious consequences, but would he be liable for putting his man servant to work in the same place when the disease only attacked adults in the rarest instances, that happening to be one of them?

"A reasonable man does not consult his imagination, but can be guided only by a reasonable estimate of probabilities. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what his reason and experience will enable him to forecast as probable, nor conduct on a basis of bare chances, a business whose success is dependent upon his accuracy in forecasting the future. He will order his precaution by

State ex rel. v. Karnes.

the measure of what appears likely in the usual course of things." Ray's Negligence of Imposed Duties, 133. Webb's Pollock on Torts, 45, says that, "a reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all."

The foregoing from the texts of the authors mentioned, was quoted, adopted and applied by Burgess, J., in American Brewing Co. v. Talbot, 141 Mo. 674, a case in which it was sought to fix the charge of negligence on the defendant in not anticipating the sinking or settling of a warehouse caused by an unusual rise in the Mississippi river. It is held in that case that, "when an injury can not reasonably be anticipated and would not have happened except under exceptionable circumstances, it is not negligence to fail to take precautionary measures to prevent it, although if taken the injury would not have resulted."

We are, therefore, of the opinion that plaintiff had no case and reverse the judgment. All concur.