JOHN J. FITZGERALD, Appellant, *v.* BROOKLYN INSTITUTE OF ARTS AND SCIENCES, Respondent.

Second Department, December 22, 1916.

Master and servant — negligence — injury to employee from explosion of carbon disulphide — Labor Law — sufficiency of notice — liability at common law — latent danger.

In an action for personal injuries it appeared that defendant's taxidermist poured a gallon of carbon disulphide over specimens in a case ten by six by seven feet, with three sides of wood and one of glass, supplied with electric current by wires in twisted form, the insulation of which would be affected by the acid, and that as the plaintiff and his coemployees by the direction of the taxidermist were closing the box, there was an explosion which injured the plaintiff and his coemployees. Carbon disulphide is not explosive unless the evaporating gas is mixed with air in certain proportions and then only when brought in contact with fire.   The explosion in question was caused by the short circuiting of the electric wires.

*Held*, that under the evidence a judgment dismissing the complaint should be reversed and a new trial granted.

The plaintiff's notice under the Labor Law limited to the negligence of the defendant and its superintendent and foreman in charge of the work in furnishing a highly explosive and dangerous disinfectant and using the same in large quantities in close proximity to the plaintiff, without giving him warning of its dangerous and unsafe nature and of the dangers to be encountered in aiding the work, was not insufficient because of the failure to state that the disinfectant was used in contact with electrical wires.

Under the circumstances the plaintiff also had an action at common law.

There was a latent danger depending upon knowledge of scientific facts which it was the duty of the defendant to have and to impart to its servants.

APPEAL by the plaintiff, John J. Fitzgerald, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 17th day of March, 1916, upon a dismissal of the complaint by direction of the court at the close of plaintff's case.

*Anthony J. Ernest*, for the appellant.

*Carl Schurz Petrasch* [*John Purdon* with him on the brief], for the respondent.

THOMAS, J.:

The defendant's taxidermist, Rockwell, poured a gallon of carbon disulphide over several stuffed eagles and a nest resting on forms resembling the stump of a tree, in a case ten by six by seven feet, and as the plaintiff and two others were, by Rockwell's direction, closing it quickly thereafter, there was an explosion that injured plaintiff and his fellows, causing the death of one. Although there is an effort to show by a chemist that an unneeded quantity of the disinfectant was used, that was not satisfactorily proved. But whether the evil to be cured required much or little is not important. The question rather is, whether it was dangerous and negligent to use, under the circumstances, an explosive quantity. Carbon disulphide or bisulphide is a liquid, and is not explosive unless the evaporating gas is mixed with air, and then only when brought in contact with fire. There is a minimum amount that will not explode, but the quantity increasing reaches an explosive point, whence, up to a maximum of quantity, it increases in violence and then declines in explosive quality, because, I judge, there is not the proper ratio to the air present. It appears in the present case that the quantity of the chemical and its explosure and the opportunity for evaporation furnished favorable conditions for an explosion, provided a spark or flame was present. A pint in the space would be absolutely safe, a half gallon would admit of "a very mild sort of combustion." But even then there must be contact with spark or flame. Therefore, there were two ways of avoiding an explosion; one by introducing a non-explosive quantity; one by removing possible contact with an explosive quantity. The nature of the chemical is like that of gasoline. It is readily volatile, and, mixed in proper proportion with oxygen, will burn and explode. The record indicates that carbon disulphide is a dangerous agent in proximity to fire, and that it should be used with corresponding caution. In the case were two operating electric lights, one on each side, set in a container with three sides of wood and one of glass, supplied with electric current by wires entering the cage and descending in twisted form to within about two feet of the bottom of the case, where they separated — one wire running to each

lamp.  If the insulation were worn from the wires or weakened  the current could short-circuit from one to another and produce a spark sufficient to ignite the carbon disulphide.  It also appears that the chemical would tend to dissolve the insulation and wear it off in a few minutes if the liquid came in contact with it.  The chemist called was a person of reliability, and his testimony is not weakened by contradiction.  He regarded the condition of the chemical as ideal for the purposes of easy ignition.  Did the defendant know of the dangerous nature of the chemical?  If so, was it using due care for its servants when, through the taxidermist, it allowed a gallon of the liquid to be poured over the objects in the case, on three sides of wood and plaster, and the glass front to be quickly closed?  If it was not acquainted with its inflammable nature, was it dutiful in employing so copiously a chemical the peril of which it did not understand?  If a prudent man would not expect exposure to contact with fire, there was no imprudence in using the mixture even in large quantities, as fire is needed to develop the danger.  But there were two wires, each charged with electricity, and if in any way they made a fire, which came in contact with the gas, an explosion could follow. It appears that the gas tended to dissolve the insulation and bring forth short-circuiting of the wires, so as to create a spark capable of firing the gas.  Would a man of skill and caution introduce an explosive quantity of gas under such circumstances?  I think that a jury would be warranted in answering that question in the negative.  If so, it could condemn an unskilled and uninformed man for so doing, inasmuch as his negligence would consist in so using a chemical of whose properties he was ignorant.  But it is argued that there is no evidence that an electric spark did ignite the gas.  But the gas could not explode without an igniting agent.  The electric wiring and light was the only agent present.  The liquid tended to expose it to the gas by dissolving the insulation.  There can be no doubt of the source of the fire under the facts presented.  But it is further urged that the defendant is not liable under the Labor Law.  The notice is limited to the negligence of the defendant and its superintendent and foreman in charge of the work, in furnishing a highly explosive and dangerous disin-

fectant and using the same in large quantities in close proximity to the plaintiff without giving him warning of its dangerous and unsafe nature and of the dangers to be encountered in aiding the work. That notice was dated August 27, 1914. The action was begun September tenth. Under date of September ninth the defendant demanded a further notice, identifying the superintendent or foreman, stating the cause of the explosion, what plaintiff was doing at the time, the nature of the disinfectant, and in what respect it was highly explosive and dangerous, in how large quantities used; and it was stated that the notice was defective in that it did not state any act of negligence for which the Labor Law (Art. XIV) affords a remedy. The plaintiff served additional notice after the action was begun. The notice and complaint show that the plaintiff regarded the chemical as self-combustible, but on the trial, by consent, the electric wiring and its dangerous condition were alleged as grounds of negligence on the part of defendant and its servants. But that left the notice dependent upon negligence in the quantity of disinfectant used, and that is not remedied even by the amendment to the notice, but the original notice is good as far as it goes and is not superseded by the notice served after the action was begun, so far as there is no inconsistency. (*Oswald* v. *Underpinning & Foundation Co.*, 159 App. Div. 684.) But the original notice is sufficient, because the negligence could be found to be in using so large a quantity under the circumstances, or in using any explosive quantity near the electric lights, and the jury could, under the notice, find negligent use of an excessive quantity. The mere fact that the notice did not state that it was used in contact with electrical wires was a scientific fact that plaintiff did not know, but he did know that the taxidermist drenched the material and that an explosion followed. He was quite right in ascribing the explosion to the quantity, although he was ignorant that the danger of quantity was dependent upon the presence of the lights. The taxidermist was a foreman for the time. He had superior charge of the dangerous work, and plaintiff and his men were assigned to aid and obey him. Plaintiff says the superintendent had at other times directed him to take Rockwell's orders. In any

case, it is evident that he was under his direction as to the particular operation, and when the taxidermist told him to close the case, instant obedience was required. It is certain that unreasonable refusal to heed the command would have resulted in discipline by the employer. But, aside from the Labor Law, the plaintiff has an action at common law. It was the plaintiff's duty to assist at the service, and he had used the same material on other occasions, but did not know the danger of using it in large quantity where there was an electric current, especially running through two twisted wires, the insulation of which could be affected by the chemical so as to permit a short-circuit. It was the duty of the master to know that, and to instruct as to the use of it, and to warn its agents and servants of the danger. But plaintiff was committed to the work unwarned. There was a latent danger dependent upon knowledge of scientific facts, which it was the duty of the master to have and to impart to its servants. (*Smith* v. *Peninsular Car Works*, 60 Mich. 501.) Although plaintiff had served before in use of the chemical, here entered a new factor, and as to that a new and more perilous service was introduced and the plaintiff should have been instructed, although he was new only to the increased risk of the service. (*Lofrano* v. *N. Y. & Mt. Vernon Water Co.*, 55 Hun, 452; affd., 130 N. Y. 658.) The manner of use was changed and a new element of danger introduced, and yet plaintiff was unwarned. (*Ryan* v. *Chelsea Paper Mfg. Co.*, 69 Conn. 454, 458.) The case is illustrated by the general principles applied in *Buckley* v. *Garden City Co.* (127 App. Div. 52); *Nichols* v. *Brush & Denslow Mfg. Co.* (53 Hun, 137; affd., 117 N. Y. 646); *Crapo* v. *City of Syracuse* (183 id. 395, 403).

The judgment should be reversed and a new trial granted, costs to abide the event.

CARR, STAPLETON, MILLS and RICH, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the event.