### RIBICH v. LAKE SUPERIOR SMELTING CO.

1. MASTER AND SERVANT—LATENT DANGER—WARNING—INSTRUCTIONS.

   Where an employé was injured while dumping pots of molten copper, by one of the pots exploding when dumped by him at a place where there was water, an instruction that it was the duty of the master to warn plaintiff that an explosion might result from the contact with water, and to explain to him the "nature, force, and probable effect" of such an explosion, was not erroneous, as imposing on the master the duty of foretelling the precise result of any possible explosion. GRANT, J., dissenting.

2. DAMAGES—EXCESSIVE VERDICT—APPEAL—CONDITIONAL AFFIRMANCE.

   Plaintiff, injured by an explosion, was badly burned, and lost one eye, and was confined to the hospital for four weeks.

| | |
|---|---|
| 123 | 401 |
| 126 | 432 |

| | | |
|---|---|---|
| 123 | 401 | |
| s82NW | 279 | |
| s81ASR | 215 | |

| | | |
|---|---|---|
| 123 | 401 | |
| s82NW | 279 | |
| s81ASR | 215 | |
| 130 | ¹310 | |
| j130 | ¹312 | |

| | | |
|---|---|---|
| 123 | 401 | |
| s82NW | 279 | |
| 133 | ¹293 | |
| j133 | ¹301 | |

| | | |
|---|---|---|
| 123 | 401 | |
| 137 | ¹ 87 | |

| | | |
|---|---|---|
| 123 | | 401 |
| 153 | ¹ | 36 |
| 153 | ¹ | 37 |

The sight of his other eye had been seriously impaired by another accident. Before he was hurt he earned $1.60 per day, and soon after leaving the hospital he was earning from $15 to $20 per month. *Held*, that a verdict for $15,000 was excessive, and that a new trial should be awarded unless plaintiff should remit all in excess of $10,000.

Error to Houghton; Haire, J., presiding. Submitted November 16, 1899. Decided March 27, 1900.

Case by Anton Ribich against the Lake Superior Smelting Company for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed on condition.

The defendant, in connection with its business of refining, smelting, and manufacturing copper, operated cupolas in which mineral copper was smelted. From these cupolas, molten copper, mixed with slag, was run into cone-shaped pots at a temperature of about 2,500°. The pots are about two feet in diameter at the top, and taper to about six inches at the bottom; are made of cast iron, about an inch thick all around; are put on two wheels, one on each side. The axle is built onto the rim of the pot on each side of the wheel. The pot is swung in the middle, with a handle about four feet long riveted to the axle, so that the whole can be pushed or pulled by the handle. The pots are dumped by throwing the handle up and over, when the cone slides out upon the ground. The fall of the cone is only the thickness of the rim. About 15 or 16 pots are used in each cupola. Two men are employed in wheeling them away and dumping them. When the molten matter is ready to be drawn, each man takes a pot, wheels it to the spout, and, when it is filled to the required height, wheels it outside the building, leaves it, takes an empty pot, and returns. The second man does likewise. The pots are arranged in a semicircle. It takes from two to five minutes to fill a pot. Plaintiff testified that it took about five minutes. Fourteen or 15 pots were used on

the day of the accident. The time required for the slag to "set" so as to be safe to dump was fixed by the experienced witnesses at from 8 to 30 minutes. The one wheeling out the next to the last pot would set it at the outer end of the line, take the pot at the other end, which had been cooling, dump it, and take it back to be filled. The one taking out the last pot would wheel it to the first place, made vacant by the removal of the first pot taken. He would then take the next pot, dump it, and return to the cupola to refill it. Thus the process would continue until the cupola was empty. They commenced to fill the pots about 7 o'clock a. m., and commenced to dump them about 8 o'clock. The accident occurred about 9 o'clock, according to plaintiff's testimony. The snow had been cleared away from a space where the pots were to be dumped. There was some ice, which was, to some extent, melted by the hot cones. When plaintiff dumped the fifth or sixth pot, it exploded, and the molten matter flew into his eyes and upon his person. The only serious injury was to his eyes. He claims, as the result of the accident, that the sight of one eye was entirely destroyed, and the other seriously injured. He was an Austrian, about 23 years old. Had been in this country about five years. Began work for the defendant in December, 1896, and was injured on the 11th day of January following. He had been engaged in wheeling slag from the furnaces before, but this was his first run of emptying copper and slag mixed. The negligence charged is the failure to instruct him as to the dangerous nature of the work, and the liability of such molten copper and slag to explode on coming in contact with water, and "as to the danger that might result from an explosion." Plaintiff testified that he had no warnings or instructions, but that he simply did as his co-employé, who had been engaged at this work for a long time, did. Several witnesses on the part of the defendant testified to informing him of the danger, and to instructing him how to do the work. Defendant also gave evidence to show that he dumped the wrong pot, contrary to instructions. Plaintiff recovered verdict and judgment for $15,000.

*A. R. Gray*, for appellant.

*A. T. Streeter*, for appellee.

GRANT, J. (*after stating the facts; dissenting*).    1.
The court instructed the jury as follows:

"And I charge you, on that subject, whenever there is
any hidden, unusual, or latent danger connected with any
work, the law imposes a duty on the master or employer
of informing the workman or employé of the danger.    It
is not enough to tell him that the work is dangerous, but
the particular danger must be pointed out and explained.
In this case, if you find from the evidence that there was
danger of an explosion from the contact of water with
the mixed copper and slag, then I charge you that that
was a danger that was known, or that should have been
known, to the smelting company, and that it was its duty
to warn Ribich, the plaintiff, of that danger, and to
explain to him the nature, force, and probable effect of
such an explosion."

The objection urged against this instruction is that it was
not the duty of the defendant to explain to plaintiff the
"nature, force, and probable effect" of such an explosion.
It is insisted that the defendant's duty was fully performed
when it had instructed him how to do his work; had in-
formed him that it was dangerous to dump the pots before
they were sufficiently set, and that an explosion would
likely result.    The question is one of great practical im-
portance in the law of negligence.    The only authorities
cited in the briefs of either counsel are *Smith* v. *Car
Works*, 60 Mich. 501 (27 N. W. 662, 1 Am. St. Rep. 542),
and *Fox* v. *Color Works*, 84 Mich. 676 (48 N. W. 203).
I must assume that counsel have made a careful examina-
tion of the authorities, and are unable to cite any which
afford much light upon the question.    After as careful an
examination as I have been able to make, I do not find
the question now presented discussed to any extent, or any
authoritative declaration of law applicable to this case.
In the *Smith Case* the plaintiff was engaged in carrying
a ladle of molten iron from one building to another,

whereby it became necessary to walk over ground covered with ice and water. The occurrence was an unusual one, made necessary by the fact that the fires had gone out in one room. No instructions or information were given as to the danger of an explosion if the molten iron came in contact with the water. The court below had directed a verdict for the defendant, evidently upon the ground that the plaintiff had assumed the risk. The language of the majority opinion does not go to the extent of the instructions now complained of. It is as follows:

" Where extraordinary risks are or may be encountered, if known to the master, or should be known by him, the servant should be. warned of these, their character and extent, so far as possible."

It was further said that it was the duty of the defendant to inform the plaintiff "somewhat of its dangerous character." This language falls far short of holding that it was the duty of the defendant in that case, in addition to instructing him how to do the work, and notifying him that there was danger of an explosion if the molten iron was spilled upon the ice, to also inform him of the "nature, force, and probable effect" of the explosion.

The *Fox Case* simply holds that it was the duty of the defendant to notify its employé, the plaintiff, of the danger and effect of inhaling Paris green, and the precautions necessary to prevent the injurious effect. Neither of these cases supports the soundness of the instruction now under consideration.

The evidence from several witnesses on the part of the defendant was very strong that plaintiff was fully instructed how to do the work, the reason for thus doing it, and the danger of an explosion if the pots were dumped before the contents were sufficiently "set." Under this instruction, the jury may have found that this was true, and have based their exceedingly large verdict upon the failure of the defendant to further notify the plaintiff of the "nature, force, and probable effect" of the explosion. It is not quite clear to me what a jury would understand

by the "nature" of an explosion, or why its nature, whatever it is, should have been explained to the plaintiff. If, by the information conveyed, he knew that there was danger of an explosion, what more notice did he require for his own protection? Should he have been told that it might kill him, it might burn him, it might put out his eyes, or it might blow off a limb? All these things, and others, might be the effect of the explosion. This would depend upon its severity, which might be different on different occasions. If a fireman employed about an engine is informed of the liability to explosion if the boiler is not kept sufficiently supplied with water, and is told what to do, in watching the water-gauges, etc., is the employer bound to inform him further of the "nature, force, and probable effect" of an explosion? Must he inform him that pieces of the engine may strike him and hurt him or kill him, and that steam will scald him? Where one employed to use kerosene or naphtha in lighting lamps or running engines is instructed how to do the work, and warned that an explosion may occur if the work is not done as directed, is it the duty of the employer to further inform him of the "nature, force, and probable effect" of an explosion, and that it will burn or injure him in other ways? It may safely be granted, and is undoubtedly true, that even an educated man would not be aware of the danger of an explosion from dumping this hot slag upon water or ice. But when he is notified that, if it is dumped there under those conditions, an explosion will follow, would not the average man understand that he was liable to be injured? Is it not a matter of common knowledge that explosions are liable to cause injury? In dumping this slag, plaintiff was obliged to stand close to, and almost over, the cone as it went upon the ice. Did he need to be told that, if there was an explosion, the hot metal would fly, and he was liable to be injured? There could not be an explosion without something flying. The only thing there was to fly was the molten slag, or the outside that had become somewhat hardened.

The authorities are uniform, and hundreds of cases could be cited, holding that the law is that "if there are latent defects or hazards incident to an occupation, of which the master knows, or ought to know, and which the servant, from ignorance or inexperience, is not capable of understanding and appreciating, it is the master's duty to warn or inform the servant of them." *Consolidated Coal Co.* v. *Haenni*, 146 Ill. 626 (35 N. E. 162); Beach, Contrib. Neg. § 359; 1 Shear. & R. Neg. § 203, note 5; Whart. Neg. § 206. Reasonable notice, in order that the employé may, by the exercise of due care, avoid the danger, is all that the law requires. Is not the law satisfied when the party has been fully instructed how to do the work, and is told that there is danger of explosion, and his work requires him to be in close proximity to the explosion if it occurs? I think it is. If the employé desires any further information before assuming the risk, he should be held to make further inquiries.

The question of instruction and warning has arisen more frequently in the employment of infants, where the employer is held to more explicit instructions and warnings than in the case of adults. 1 Shear. & R. Neg. § 46, note 1. The authorities are meager in determining what is a sufficient warning. Much must depend upon the circumstances of each case, in applying the rule. In *Powers* v. *Sugar Co.*, 48 La. Ann. 483 (19 South. 455), plaintiff accidentally stepped into a ditch of hot water in the evening, and was severely scalded. Defendant's manager testified that he told the plaintiff "to be careful; that there was a ditch along the side, and the floor was uneven." It was held that the admonition was insufficient. The court said, "If an admonition of danger is relied on, it must be timely and explicit," and held that the defendant should have informed him that the water in the ditch was hot. Where the negligence alleged was in permitting a plaintiff to pick up sodium and potassium and put them into water, without warning him of their dangerous and explosive nature when placed in contact

with water, it was held that proof of knowledge of facts which would naturally suggest it was all that the law required. *Hill* v. *Drug Co.*, 140 Mo. 433 (41 S. W. 909). The ordinary man knows the effect of dangerous elements. It is the common education of all. He knows that hot water and steam will scald; that fire will burn; that water will drown; that explosions of powder, dynamite, oil, naphtha, and molten matter will injure. When he is instructed how to handle these elements in order to avoid explosion, and is informed that there is danger of explosion if he does not handle them as instructed, he has received from his employer all the warning that the law requires. I think that the instructions were erroneous.

2. It is earnestly urged by counsel for defendant that the court should have directed a verdict for it, because the evidence conclusively shows that if plaintiff, as he testified he did, took the pot in its order and dumped it, no explosion could possibly have occurred. This would require us to find that it took a half hour or more to fill the pots, while there is testimony that it took less time. It would also require us to leave out of consideration an important piece of testimony from Mr. Franz, plaintiff's coemployé and a witness for defendant, that he told plaintiff just before the explosion, "You better leave them set a little while; they are too hot." The court explicitly instructed the jury that, if this witness so informed plaintiff, he could not recover. The contention upon this point cannot prevail.

3. Plaintiff alone testifies that no instructions or warning were given him. Several witnesses testify that they were given. Counsel strenuously urged that the preponderance of evidence is so great in favor of defendant that this court should grant a new trial, under a statute now authorizing this court to review motions for a new trial. Inasmuch as, in my judgment, the case should be reversed on other grounds, we need not consider this question.

4. Complaint is made that the verdict is excessive, and that for this reason the court should have granted a new

trial. The statute above referred to imposes the duty upon us to review this question, and, however unpleasant this duty may be, we have no right to escape it. Plaintiff lost the sight of one eye. His left eye had been seriously injured by another accident. His own physician testified that he had 30 per cent. of normal sight of his left eye. He was in a hospital four weeks because his physician told him that he did not want to attend the case or be responsible unless he was removed to some place where he could get better care and nursing than he could get in his boarding-house. He testified that he was better at the trial than when he came out of the hospital.

"I was suffering from pain then nearly as bad as at the time I got burned. I could not tell the pain I suffered, but it was about two months after that. I was suffering about two months after that very bad. I have had pain since the two months."

He is not deprived of all ability to labor. Soon after leaving the hospital he worked for defendant several months, helping teamsters, and earned from $15 to $20 a month. Before he was hurt he earned $1.60 per day. At 4 per cent., the $15,000 would yield an annual income of $600,—$100 more than he could earn before he was injured. At 3 per cent., it would yield $450, which is within $50 of what he could earn if he labored every working day in the year, including holidays. Counsel cite *Retan* v. *Railway Co.*, 94 Mich. 146 (53 N. W. 1094), where a verdict for $30,000 was sustained. That case was decided before the statute above mentioned was passed. Besides, there is no parallel between that case and this. In that case, by the loss of both feet, the plaintiff was a helpless cripple for life, and was deprived entirely of the power of locomotion. I cannot avoid the conclusion that the verdict is excessive. As the verdict should be set aside upon other grounds, and as the testimony upon another trial may be different, it is unnecessary to determine upon this record by how much we think the verdict should be reduced, or a new trial ordered. On the question of excessive verdicts, see *Stand-*

*ard Oil Co.* v. *Tierney,* 14 L. R. A. 677 (92 Ky. 367, 17 S. W. 1025, 36 Am. St. Rep. 595), and note.

Judgment should be reversed, and new trial ordered.

MONTGOMERY, C. J. I am not able to agree with my Brother GRANT that there was error in the instruction given. In *Smith* v. *Car Works,* 60 Mich. 501 (27 N. W. 662, 1 Am. St. Rep. 542), it was said that where extraordinary risks are or may be encountered, if known by the master, or should be known by him, the servant should be warned of them, their character and extent, so far as possible. I do not think the instruction which imposed upon the defendant the duty of explaining to plaintiff "the nature, force, and probable effect" of such an explosion as would be likely to occur from the contact of water with mixed copper and slag, fairly construed, goes beyond the doctrine of the *Smith Case.* It is a reflection upon the intelligence of the jury to assume that they would construe this language as imposing upon the defendant the duty of foretelling the precise result of any possible explosion. What the language fairly imports is that it was the duty of the defendant to warn the plaintiff that the explosion would be of such a nature and such force as would be likely to cause injury, and, so construed, the instruction is within the rule of the *Smith Case.*

I agree with my Brother GRANT that we should not evade the responsibility of ordering a new trial where a substantial injustice is clearly shown. In my judgment, the verdict in this case is excessive, and a new trial should be awarded unless the plaintiff will remit from the verdict all in excess of $10,000.

HOOKER, MOORE, and LONG, JJ., concurred with MONTGOMERY, C. J.