## NOWAKOWSKI v. DETROIT STOVE WORKS.

1. MASTER AND SERVANT—PERSONAL INJURY—DUTY TO WARN OF
   DANGER.

   The plaintiff, a boy less than 18 years of age, worked as an
   apprentice in a foundry for a month at making and filling
   molds. On the day of the accident he met a fellow-servant,
   who spilled a teaspoonful of molten iron on a damp floor,
   causing an explosion that put out plaintiff's eye. The testi-
   mony showed that melted iron always explodes when spilled
   on a damp floor. In this foundry the spilling of melted iron
   was a daily occurrence, and the plaintiff had seen it spilled,
   but testified that he did not know an explosion of this kind
   was liable to occur. *Held,* that defendant was not guilty of
   negligence in failing to warn the plaintiff of the danger from
   an explosion of molten iron. MONTGOMERY, J., dissenting.

2. SAME—SAFE PLACE—FOUNDRIES—WET FLOORS.

   A foundry that is as safe as any, so far as its general condition
   is concerned, is not made so unsafe by being used when the
   floor is damp as to make the owner liable to an employé for
   an injury caused by molten iron exploding on the wet floor,
   though in other foundries time is allowed for floors to dry
   after sprinkling. MONTGOMERY, J., dissenting.

3. SAME—ORDINARY HAZARDS.

   While a novice is entitled to warning against dangers of an
   extraordinary character, an employer is not bound to antici-
   pate every possible accident, and warn him against them.

Error to Wayne; Frazer, J. Submitted February 18,
1902. (Docket No. 21.) Decided April 8, 1902.

Case by Frank Nowakowski, by next friend, against
the Detroit Stove Works, for personal injuries. From a
judgment for defendant on verdict directed by the court,
plaintiff brings error. Affirmed.

*S. F. Griffiths* and *Lehmann & Riggs,* for appellant.

*Byron S. Waite* and *Charles B. Warren,* for appellee.

Hooker, C. J. The plaintiff had worked as an apprentice in a foundry for a month or more, at making and filling molds; a part of his duty being the carrying of melted iron from the cupola to the molds in a ladle. On the day in question he was returning to the cupola, and met a fellow-servant carrying a ladle full of molten iron; and, as he approached, a teaspoonful was spilled, and, striking upon the damp floor, a portion of it flew up and put out plaintiff's eye. This action is brought to recover damages, and the negligence alleged against the master is that it failed to provide a safe place to work, and to warn the plaintiff of the danger of explosion of spilled metal, and of the danger of injury therefrom. The evidence shows that this foundry floor was as safe as any, so far as its general condition is concerned. Counsel say that the place was not safe because the floor was made too damp, or used too soon after sprinkling, and evidence was offered to show that other foundries allowed time for their floors to dry after sprinkling. The court directed a verdict for the defendant, and plaintiff has brought error.

We have often held that there is some latitude open to employers in the selection of machinery and methods; that the latest and most approved are not required; and while we have held that novices are entitled to instruction and warning as to the use of dangerous machinery, and against dangers not apparent, there is a limit to this duty. If the testimony is to be believed, melted iron always bursts or explodes and flies when it is spilled upon a wet floor, and spilling from ladles is of daily occurrence in a foundry. This foundry was no exception, and plaintiff's own testimony shows that he had seen it spilled, and spilled it himself, but that until he was hurt he did "not know that an explosion of this kind was liable to occur."

It is manifest that no serious injury would be likely to occur from the spilling of a teaspoonful of iron, unless a spark happened to strike an eye, which is a remote contingency. It goes without saying that the master was not called upon to tell this boy, who had worked a month at

the business, that when approaching another, carrying hot iron, he should turn his back, or get behind a screen, to avoid having his eye put out if his fellow-servant should happen to spill a teaspoonful of iron on the floor. In my opinion, this was not such an extraordinary risk as calls for the application of the rule laid down in *Smith* v. *Car Works*, 60 Mich. 501 ( 27 N. W. 662, 1 Am. St. Rep. 542 ),. and *Ribich* v. *Smelting Co.*, 123 Mich. 410 ( 82 N. W. 279, 48 L. R. A. 649, 81 Am. St. Rep. 215 ). A master is. not called upon to anticipate every possible accident, and may leave an employé to learn the hazards of a business,. as he learns the business itself, from his associates and experience, where the hazards are not extraordinary. Admittedly, this master was not required to do more than to say, "If you spill iron on the floor, it will fly up, and may hurt you,"—if, indeed, more could be asked than a warning that it would fly up. The plaintiff was as much bound to know that it might hit him in the eye as the defendant was, if he knew or had been warned that it would explode and fly if it fell upon the floor. If this plaintiff had been told that melted iron would explode when spilled, there is not the least reason to suppose that he would have quit his work at the foundry business, or refused to pass a fellow workman when carrying it. The two cases cited were radically different from this, and both cases were so near the line that members of the court dissented. Both rest upon the principle that a novice is entitled to warning against dangers of extraordinary character, arising in each of those cases from emptying molten metal upon ice by the injured party, which was certain to subject such person to imminent danger of severe injury or death. In the present case the danger from passing one with a ladle of metal was slight, and the consequences, as a rule, would not be extraordinary if a little metal should be spilled. ·

The judgment is affirmed.

MOORE and GRANT, JJ., concurred with HOOKER, C. J.

MONTGOMERY, J. ( *dissenting* ). The testimony offered on behalf of the plaintiff tended to show that he was an

apprentice in the molding room of the defendant, less than 18 years of age. He lost the sight of his eye by reason of molten iron being accidentally spilled by a co-employé upon the ground necessarily traversed in carrying it, which molten iron came in contact with water or very damp earth. The plaintiff offered testimony tending to show that the "mash," so called, over which the workmen were required to travel, had been sprinkled but a few moments before, and that the mash was damp or wet. There was also testimony tending to show that the practice in other foundries was to sprinkle several hours before the molding was done, and that, when the iron came in contact with the dry earth, explosions were not likely to occur. The learned circuit judge directed a verdict for defendant, apparently upon the ground that the injury occurred to the plaintiff wholly through the fault of the fellow-servant, Zelinski.

In my opinion, the question of whether the defendant provided a safe place to work, and gave the requisite and proper instructions to this plaintiff, and properly cautioned him against the—to him—unknown danger, was a question for the jury. His testimony shows that he had no knowledge of the danger of an explosion from molten iron coming in contact with the damp earth or with water; and the case cannot be distinguished upon principle in this respect from *Smith* v. *Car Works*, 60 Mich. 501 (27 N. W. 662, 1 Am. St. Rep. 542). In that case the plaintiff's intestate was an adult, and yet the court said, speaking through Mr. Justice Sherwood:

"I do not think the court can presume that the common laborer in a foundry or machine shop, such as this was, is possessed of the scientific knowledge necessary to enable him to comprehend and avoid any such danger as overtook Mr. Smith on that icy way, resulting in his death; and I think, before he was called upon to perform the hazardous undertaking by the foreman in charge, he should have been informed somewhat of its dangerous character. This, however, was not done, and there is no pretense that the death of Mr. Smith was not caused by

the explosion which followed the contact of the molten iron with the water and ice covering the dangerous passage over which the same was required to be carried."

The only possible difference between the two cases is a difference in the degree of danger. If it is true that the contact of molten iron with water or with damp earth will cause an explosion sufficient to result in such a serious injury as the loss of an eye, the duty of giving notice of such danger to an employé can hardly be avoided by noting the difference in degree between such a case and the *Smith Case*. This case was followed and recognized as authority in *Ribich* v. *Smelting Co.*, 123 Mich. 401 (82 N. W. 279, 48 L. R. A. 649, 81 Am. St. Rep. 215). Unless these cases are to be overruled, it seems to me clear that there was a question for the jury in the present case.

LONG, J., did not sit.