C. E. HARDY v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

**Master and servant:** VICE-PRINCIPAL: NEGLIGENCE: LIABILITY OF MASTER.  A superintendent of the work of excavating an embankment by means of blasting is a vice-principal, and his act in arbitrarily directing an employee to perform a service in a place of great

peril, the dangers of which he must be held to have had knowledge, was negligence for which the master is liable. Thus, where the superintendent, as in this case, directed plaintiff to load a hole in the rock by pouring powder into it shortly after it had been blasted with dynamite, rendered the master liable for plaintiff's injury caused by a premature explosion of the powder. ⁄

**Same:** DIRECTION BY SUPERIOR: CONTRIBUTORY NEGLIGENCE: EVIDENCE.
2 Primarily it is the duty of a servant to obey the direction of his superior, and where the servant does not have actual knowledge of the dangers incident to a service which he is directed to perform, he is justified in relying upon the knowledge of his superior, and may assume that it is safe to obey his order and will be deemed to have exercised ordinary care in so doing, although his voluntary act in performing the work might tend to show negligence on his part.
In this action the plaintiff was injured while blasting by a premature explosion of powder, and the evidence of contributory negligence is held to present a question for the jury.

**Personal injury:** EXCESSIVE VERDICT. The plaintiff in this action was
3 injured and burned about the breast, arms, thigh and face by an explosion of powder while blasting. He was for several weeks confined to a hospital and to his bed; the wounds did not heal for nearly a year and left scarred tissue; he lost the sight of one eye and that of the other was seriously impaired; but his earning capacity was not entirely destroyed. *Held,* that a verdict for $15,000 was excessive and is reduced to $12,000.

*Appeal from Johnson District Court.*—Hon. R. P. Howell, Judge.

Wednesday, October 26, 1910.

ACTION for damages resulted in a judgment against defendant, from which it appeals.—*Affirmed* on conditions.

*Carroll Wright* and *J. L. Parrish,* for appellant.

*Wade, Dutcher & Davis,* for appellee.

LADD, J.—At the first trial the only issue submitted to the jury was whether the defendant was negligent in

failing to instruct and warn plaintiff respecting the dangers incident to the work in which he was employed. On appeal the evidence was held insufficient to establish negligence as alleged (139 Iowa, 314), and upon remand an amendment to the petition was filed, in which it was alleged that defendant was negligent, in that its vice principal ordered plaintiff by an imperative command to pour powder into a hole and to go into a place of danger, knowing that the hole had just been sprung, and having knowledge of the danger that sparks or heated rock might be in said hole, and as to which the plaintiff claimed he had no knowledge. In support of this charge of negligence and as bearing on the issue of contributory negligence, the evidence tended to show that plaintiff entered the employment of defendant in April, 1901, with a gang of men operating a steam shovel. Up to July 4th of that year he worked in the pit, the duty of himself and four others being to bring forward and lay ties and rails in front of the steam shovel when it had cleared sufficient space, so that it could move forward in performing its work. He quit on the last-named day, and did not resume his work until about October 1st. From then on his work was in the pit or in drilling holes and assisting in loading them with dynamite to be exploded so as to loosen the earth in embankments or when frozen, the more readily to be shoveled on board of cars. About May 1, 1902, he was employed as "powder monkey;" his duties being to handle the dynamite and powder. It appears that prior to this time powder had not been used, but thereafter some forty or fifty holes, two or two and one-half inches in diameter and fifteen to thirty feet deep, were drilled from sixteen to twenty feet back from the edge of the bank being removed. Into each of these he dropped four or five sticks of dynamite, the last with a fuse about two feet long lighted. The resulting explosion enlarged the hole at the bottom, and usually this was repeated with seven or eight sticks

of dynamite. This was called "springing" the hole. Afterwards, but not until the place was reached by the steam shovel, the hole was loaded by pouring into it one hundred and · fifty· to two hundred pounds of powder with several hundred pounds of dynamite, and this was discharged by the use of an electric battery.

On the evening of July 12th James Nesmith, who was in charge of the work for defendant, went to Davenport to procure powder, and a few minutes prior to his return on the following morning a 'hole the drilling of which had just been completed had been sprung. As the train came in, plaintiff went down to the car some sixty or seventy feet distant. The work could not proceed until the hole was shot, and Nesmith immediately inquired if it was ready to shoot. Plaintiff responded that he had just sprung it. Nesmith said: "It don't make a damn bit of difference. Go on (or hurry up) and load it. We have got to have (or I want to get) something done. We are all late." Plaintiff took a can up to the hole, opened it, and laid it so that the powder would run in. The opening in the can was about an inch in diameter, and after a moment, observing the powder still running, he exhibited some of it to Nesmith, with the remark that it was finer 'than that which they had been using. He then put the powder back, and shortly afterwards reached down and lifted the can on end so all the powder would run out, when there was an explosion, seriously injuring him. The plaintiff was then about twenty-two years of age, had never noticed fire or cinders in the holes, but had observed dust or smoke arise therefrom, after explosions. He had never made a study of the subject, nor had he been informed as to the conditions probable after springing. Previous to this no hole had been loaded within an hour after being sprung, and probably none had been sprung and loaded on the same day. For a more detailed statement of the record see opinion on the former appeal (139 Iowa, 314). The

second trial resulted in a judgment for plaintiff, and it
is said by appellant that a verdict should have been directed
for defendant for that ·(1) James Nesmith who gave the
order in doing so did not act as vice principal of defendant;
and (2) it conclusively appeared that plaintiff by his own
negligence contributed to his injuries, and that there was
error in not submitting the issue as to whether plaintiff
assumed the risk.

I.   No question is raised but that Nesmith in giving
the order was negligent.   Nesmith knew that the hole had
just been sprung, and as representative of the defendant
was charged with knowledge of the dangers,
latent as well as patent, ordinarily accom-
panying the business which was being done.

1. MASTER AND
SERVANT:vice-
principal: neg-
ligence: lia-
bility of
master.

Without investigation, he peremptorily di-
rected plaintiff to load the hole immediately.   As the place
was then one of great ·peril, there can be no doubt but
that the act of Nesmith was not only negligent, but one
for which the defendant was responsible.   He was superin-
tendent of the work in excavating and removing the em-
bankment.   He hired and discharged employees engaged
thereat, and, though he sometimes operated the crane to
which the shovel was attached and at others acted as en-
gineer, he at all times exercised entire control.   Manifestly,
he was vice principal with reference to the work being
done, and, as the order in effect assigned plaintiff a dan-
gerous place at which to work, it was masterial in character,
and not merely that of ·a fellow servant.   Of course, it
was a part of plaintiff's duty to load the holes, but not
at a time when this was likely to cause an explosion.   The
effect of the order was to require him to work in a situa-
tion exposed to a peril not theretofore encountered, nor in
so far as appears contemplated.   Not every direction with
reference to the progress of the work even when given by
a superior servant is to be regarded as coming from the
master, as appears from the authorities relied on by ap-

pellant. *Halhaway v. Railway,* 92 Iowa, 341; *McGinley v. Levering,* 152 Pa. 366 (25 Atl. 824); *Dill v. Marmon,* 164 Ind. 507 (73 N. E. 67, 69 L. R. A. 163). But where the effect of the peremptory order of a person in complete control, as was Nesmith, is to place the employee in a place of great peril in which to perform his duties, the decisions are conclusive that the principal will be held responsible for the act as nondelegable. *McGuire v. Waterloo & C. F. Mill Co.,* 137 Iowa, 447; *Meier v. Way, Johnson, Lee & Co.,* 136 Iowa, 302; *Beresford v. Am. Coal Co.,* 124 Iowa, 44.

II.    Even though plaintiff had loaded forty or fifty holes previous to the last accident, he had done so at times when no question as to the existence of live sparks or heat therein could well have arisen. He may have known that the explosion of sticks of dynamite at the bottom caused fire and heat, but there is nothing in the record justifying the conclusion that he was aware of how soon thereafter it would be safe to load with powder. In drilling water was poured in the holes, and therefore no attempt to load had ever been made within an hour after springing, and probably not until the following day. How, then, can it be said that he was at fault in obeying the peremptory order of Nesmith? He was not bound to set up his judgment against that of the superintendent in charge. If he did not know whether it was then dangerous to load the hole, he might assume, in the absence of a showing to the contrary, that Nesmith did know and act accordingly. As well stated in *Illinois Steel Co. v. Schymanowski,* 162 Ill. 459 (44 N. E. 879):

2. Same: direction by superior: contributory negligence: evidence.

When the master orders the servant to perform his work, the latter has a right to assume that the former with his superior knowledge of the facts, would not expose him to unnecessary perils. The servant has a right to rest upon the assurance that there is no danger, which is implied

by such order.  The master and servant are not altogether upon a footing of equality.  The primary duty of the latter is obedience, and he can not be charged with negligence in obeying an order of the master unless he acts recklessly in so obeying.  Whether he acted thus recklessly in obeying his master's order, or whether he acted as a reasonably prudent person should act, are questions of fact, to be determined by the jury.

Though the employee might have doubted the safety of loading the hole if left to his own judgment, the direction of the superintendent might have set all these doubts at rest and have induced him to do what he otherwise might not have done.  Says Mr. Labatt in his work on Master and Servant, section 451: "An assurance of safety, like a specific order, may be regarded as having the effect of lulling the servant into a feeling of security, and give him good reason to believe that there was no need for the vigilance which he would otherwise have exercised."  That author also points out that though, in the absence of an order, the servant might be held to have been aware of the danger, and therefore to have been negligent, yet, if ordered by the master, he may be excused for yielding to his better information, judgment, or stronger will and held to have acted with ordinary prudence.  Quoting from section 439:

"There is also a large class of cases in which that fact is treated as a differentiating element, and in which the courts apply a doctrine which, in so far as it is susceptible of formal enunciation, may be stated as follows:  Although the circumstances, when abstracted from the fact of the giving of the order, may be such as to justify a court in holding that the servant appreciated the danger to which his injury was due, and was negligent in subjecting himself to that danger, such a conclusion is, in a large number of instances, not warrantable, if the testimony goes to show that the immediate occasion of his being subjected to that danger was his compliance with the order.  The effect of this doctrine is that where the servant in obedience to an

order performed a duty which, though dangerous, is not so dangerous as to threaten immediate injury, or where it is reasonably probable that the work may be safely done by using more than ordinary caution or skill, he may recover if injured. It will be seen that this rule when analyzed amounts to nothing more than a statement that in determining what is ordinary care on the part of a given individual all the circumstances of his position should be regarded, including in cases like the present the servants orders, the demands of his duty, the apparent risk to be met, and the purpose of his action, no less than his physical surroundings. Having weighed all these considerations, unless the case then discloses that the risk was such as would not be taken by a man of common prudence so situated, the court can not justly declare that the taking of that risk by the servant in obedience to orders was negligent. The practical result of such a doctrine when stated in terms of the servant's knowledge is that the servant may maintain an action, unless he not only knows what is the risk to be encountered, but also that it will probably be attended with injury which he can not avoid by the exercise of care and caution.

The general rule is that the servant may often be deemed to have used ordinary care when acting under the express invitation or advice of the master, even though but for that circumstance his conduct would be deemed clear evidence of negligence. Shear. & Red. Negligence, section 91. As said in *Moline Plow Co. v. Anderson,* 19 Ill. App. 417: "The law recognizes that under the influence of a direct and personal order or urging of this kind the master and servant do not stand on equality. The servant is not left to his cool judgment, but acts under the personal influence of the master, which for many obvious reasons is very great. The law makes allowance for this, and visits the consequence of the negligence on the master." See *Patterson v. Ry.,* 76 Pa. 389 (18 Am. Rep. 412); *Chicago & N. W. Ry. v. Bayfield,* 37 Mich. 205; *Richmond & D. Ry. v. Rudd,* 88 Va. 648 (14 S.

E. 361); and generally cases collected in note to section
439, Labatt's Master and Servant. As already intimated,
the facts of this case bring it within the above rule. It
may be that, as was held on the former appeal, defendant
was not negligent in failing to instruct and warn plaintiff
with respect to the dangers incident to the work in which
he was employed and that, with reference to that charge
of negligence, the plaintiff's knowledge was such as to
preclude recovery, though it would be difficult to discover
anything in the record carrying to him information of how
long after a hole had been sprung it would be cool enough
to be loaded. But whether he was negligent in what he
did in pursuance of a peremptory order of the superin-
tendent, notwithstanding the knowledge he must be as-
sumed to have possessed, is quite another question, and one
which was not before the court on the former appeal. Un-
doubtedly language will be found in that opinoin which
would seem to foreclose recovery on the issue submitted to
the jury on the last trial, but, in so far as more was there
said than necessary in holding that defendant was not negli-
gent in omitting to warn or explain to plaintiff the dangers
incident to the handling of explosives upon his employment
as powder monkey for the reason that plaintiff was aware
of these and with respect to such negligent omission did
not observe the care the law exacted of him, it was not
pertinent to the matters presented, and must be regarded
as *dicta*. Indeed, it is there noted that the conduct of
Nesmith on this occasion was not before the court for
consideration as an act of negligence, and it necessarily
follows that it was not then for the court to say whether
in obeying Nesmith's peremptory command the plaintiff
was negligent. We are of the opinion that the issue as
to plaintiff having contributed to his injury by his own
negligence was rightly submitted to the jury.

III. The contention that the court erred in not sub-

mitting the issue as to assumption of risk is ruled by *Martin v. Des Moines Edison Light Co.*, 131 Iowa, 724.

IV. It is contended that the amount allowed as damages, $15,000, is excessive. He was burned over his breast, two-thirds of the surface of the forearm and• half of his arm, and a space on his thigh as large as the hand. Both eyes were closed for ten days, and he was in the hospital at Davenport for three weeks, when he was removed to his home in Oxford. He was confined to his bed until the last of August, but did not suffer a great deal of pain except when the dressings were changed. He could not sleep well, and the wounds did not heal finally until the following April, and then left scarred tissue where burned. This was deadened to sensation, not porous or resistant to cold, and seemed too tight. The sight of the left eye was lost, and the right eye was weak, and he could not "see much over five or ten minutes. It commences to water and burn and everything blurs." According to a physician, his left eye can not be restored or improved, and is "a constant menace to the vision of the right eye" because of "sympathetc ophthalmia which is liable to destroy the sight of the right eye." A piece of powder is in the corner of the right eye, and can not safely be removed and the vision of the right seems to have decreased since he examined it two years before. Prior to the injury he was in good health, earning $1.75 per day with a life expectancy according to the American Experience Tables of 41.53 years. At the time of the last trial in February, 1909, he was engaged in chopping wood. In the winter previous he worked in a poultry house for a month at $1.35 per day. He was employed in helping to put in a water system at West Branch the summer before at $2 per day, and had "worked about town at pretty near everything that was done." For two years and one-half he served as street commissioner at Oxford at $40 per month. Evi-

3. PERSONAL INJURY: excessive verdict.

dently his earning capacity had not been greatly impaired and will not be, unless the sight of the right eye shall be lost. On the former trial the verdict was $8,000. While the loss of an eye is a serious injury, we are inclined to the opinion that, in view of the showing as to his earning capacity since the accident, the verdict was excessive. The case is quite similar to that of *Ribich v. Lake Superior Smelling Company*, 123 Mich. 401 (82 N. W. 279, 48 L. R. A. 649, 81 Am. St. Rep. 215), where a pot exploded throwing the molten matter therein into the eyes of the employee. The sight of one eye was entirely destroyed, and the other seriously injured. A verdict of $15,000 was held to be excessive, and a remission of $5,000 exacted.

If the plaintiff shall file a remittitur of the amount allowed in excess of $12,000, the judgment as so modified may stand; otherwise it will be reversed.—*Affirmed* on condition.