KREFT v. GREAT LAKES STONE & LIME CO.

1. MASTER AND SERVANT — NEGLIGENCE — EXPLOSIVES — WARNING AND INSTRUCTING SERVANT—EVIDENCE—QUESTION FOR JURY.

In an action for the death of a servant as the result of injuries caused by the premature explosion of a charge of dynamite which decedent was tamping into a drilled hole, evidence as to whether decedent had been properly warned or instructed by the master in the performance of said work, *held*, to present a question for the jury.

2. SAME—WARNING OR INSTRUCTION REQUIRED.

Adequate instruction and warning is such as a man of good common sense, with ordinary intelligence and prudence, would deem necessary to give the very man he was instructing or warning, considering his experience and knowledge or want of the same.

3. SAME—GENERAL WARNING INSUFFICIENT.

Mere general warning as to the danger to be apprehended from the use of dynamite would not be sufficient, but there must be some specific warning and instruction as to the exact use of the dynamite that was to be placed in said holes that would satisfy the requirements of the law as to the giving of notice or warning.

4. SAME—BURDEN OF PROOF.

Plaintiff had the burden of proving defendant's failure to adequately warn and instruct decedent in the use of dynamite.

5. SAME—CONTRIBUTORY NEGLIGENCE—WILFUL NEGLIGENCE — BURDEN OF PROOF.

While wilful negligence of decedent would be a complete defense, the burden was upon defendant to prove same.

6. SAME—EVIDENCE—NECESSITY FOR WARNING—DIRECTED VERDICT.

While it appears that decedent was familiar with the use of dynamite in blasting when but a small stick was used, it cannot be said as a matter of law that he had such knowledge of the danger of tamping it in a deep hole

On duty of master to warn servant engaged in blasting of dangers therefrom, see note in 19 L. R. A. (N. S.) 997.

as to relieve defendant from the duty of giving him specific instructions thereon.

Error to Alpena; Emerick (Frank), J.  Submitted June 24, 1921.  (Docket No. 16.)  Decided October 3, 1921.

Case by Bertha F. Kreft, administratrix of the estate of Frederick Firsch, deceased, against the Great Lakes Stone & Lime Company for the negligent killing of plaintiff's decedent.  Judgment for plaintiff. Defendant brings error.  Affirmed.

*Henry & Henry,* (for appellant.

*I. S. Canfield,* for appellee.

SHARPE, J.  Defendant asks reversal of a judgment entered on a verdict for plaintiff in an action to recover damages for the death of plaintiff's intestate while in defendant's employ.  The assignments of error raise substantially the same questions presented to the trial court on a motion for a new trial.  His opinion, in denying such motion, so well states the facts and the law applicable thereto that we adopt it as our own:

"The plaintiff's intestate, Frederick Firsch, was killed on July 22, 1918, by the premature explosion of a charge of dynamite which he was assisting in placing in position for use in carrying on the business of the defendant in quarrying stone at its plant on the Lake Huron shore in Alpena county.  The method employed by the defendant was to drill to a considerable depth a series of holes in a line at a proper distance back from the edge of the excavation of the quarry, load these holes with dynamite and explode the same by electricity.  In this operation there was two sets or gangs of men employed.  The 'drillers' who drilled the holes to be subsequently loaded or charged with dynamite, with which latter work the drillers

had nothing whatever to do, and the 'blasters' who placed, and pushed with a pole when necessary, the sticks of dynamite into the holes at the proper depth and position to be exploded.   On the morning of the day of his death the deceased was taken from his work at 'plug drilling' in the bottom of the quarry by the foreman of the 'blasters' and put to work assisting such foreman in loading drill holes with dynamite.   In pushing the dynamite, with a pole provided for that purpose, into the fifth or sixth hole an explosion occurred which caused the death of Mr. Firsch a few hours afterward in the ambulance which had come out from Alpena to remove him to the hospital in town.

"This action is brought under the survival act to recover damages for the alleged negligence of defendant resulting in the death of plaintiff's intestate, and the sole ground of negligence submitted by the court to the jury was the claimed failure of defendant to instruct its employee as to the proper handling of dynamite when being placed or pushed into place in the drill holes, or to warn or caution him of the danger attending the same.   Mr. Firsch, a young man 30 years of age at the time of his death, owned and carried on a small farm situate about five miles from the plant of defendant.   In the fall of 1917 he had worked at the quarry at duties not connected with blasting, except upon one occasion which will be referred to hereafter, and, returning in the spring of 1918, he had worked at and about drilling until haying time when he was away on his farm for a while, returning to work at the quarry on the morning of July 22.

"Mr. Cooley, the foreman in charge, stated in his testimony what occurred on that morning as follows:

"'A. On the morning of July 22, Monday morning, Mr. Firsch had returned to work after being absent for a week or ten days.   I met him at the foot of the bluff about the middle of the quarry and he asked me what I had for him to do. I says "Fred, go over to number two shovel and drill whatever big stones is laying alongside."   I says, "I will be over that way after a little," * * * and I went over, * * * and we went up the hill and we started loading.   We loaded the first hole, and we loaded the second hole and on the third hole

I began to think that the pole was being handled a little reck-less and I said, *all I said to Frederick,* I says, "Frederick, handle the pole careful," I says, "take it easy; we have got lots of time," and we went on about our loading.

"'Q. Did he obey your instructions in that regard?

"'A. He obeyed my instructions until the pole went down the hole at the time of the explosion.

"'Q. On that morning state whether or not he used the tamp-ing pole at any time  without your express instructions?

"'A. After that first instruction I gave him he didn't.   When-ever the pole went down in the hole I asked it to go—asked him to let it down.'

"As to the experience of, and warnings given to, Mr. Firsch in the short time the latter worked at the quarry in the fall of 1917, Mr. Cooley testified that Mr. Firsch worked for a few days at 'plug drilling' but mostly at other work—

"'Q. During the fall of 1917 I will ask you to state whether or not Mr. Firsch did any tamping on the hill?

"'A. The fall of 1917 Mr. Firsch helped me on one blast, * * * Mr. Firsch handled the tamping pole probably for three holes on the dynamite.   I remember calling him, "Come and take the pole until he (Weise) gets back."   He came over and took the pole and we started loading the first hole and I didn't see where it was necessary, the way he was handling the pole, to give him any instructions on that shot.   He handled the pole very gently.   He only helped me load two or three holes in that one shot.' ·

"These two occasions, one in 1917 and the other on July 22, 1918, are the only ones when deceased was required to do, or did any work in placing or pushing the dynamite into the drill holes in the limestone cliff of the quarry.   And the foregoing testimony of Mr. Cooley, defendant's foreman and witness, and the testimony of plaintiff's witness, Ellsworth, embraces the whole case as to what instructions and warnings were, or were not given to deceased, and the mer-itorious question on this motion is—'Was the subject of defendant's duty and liability in regard to such instructions and warnings properly submitted to the jury?'

"*First.* The testimony of Cooley and Ellsworth raised an issue that was necessarily for the jury and

not the court. If it be admitted that foreman Cooley warned or instructed deceased in exactly the words as testified by him, and as assumed by the court in the charge that he did, it still would remain a question for the jury whether such instructions were adequate or sufficient. This proposition should be kept in mind while considering many of the questions raised on this motion, particularly as to the rejection by the court of certain requests to charge preferred by defendant.

"*Second.* Such issue was submitted to the jury by the court under instructions of the following substance: In the first place the jury was most emphatically told that the only ground of negligence submitted to them, or which they should consider at all in reaching a verdict, was the asserted failure of defendant to properly instruct deceased in the use of dynamite placed or pushed into the drill holes, or to warn him of the danger of improperly handling the same. And in this connection the jury was further told that Mr. Cooley in warning and instructing Firsch had the right, and it was his duty to consider and to act upon his own knowledge of Firsch's experience, or his want of the same, gained from the fact that Firsch during his whole employment at the plant, both in 1917 and 1918, had been employed solely under the immediate supervision and direction of Cooley.

"The court said:

"'Adequate instruction and adequate warning is such instruction and such warning as a man of good common sense, with ordinary intelligence and prudence would deem necessary to give the *very* man he was instructing or warning. It might require a much higher degree of instruction to some child or boy of immature mind than it would in the case of an adult experienced man.

"'In this case it would be such warning as a man of ordinary prudence and intelligence would deem suitable to give to Mr. Firsch having in view what experience or knowledge he knew Firsch possessed about the use of dynamite and its particular use in this place and for this purpose.

"'His experience and knowledge or his want of experience and knowledge should be considered by the person who purposes to give and who does give this warning and instruction.'

"This covers, in my opinion, the subject-matter of defendant's twelfth and thirteenth requests to charge, and its seventeenth reason on this motion.

"Again, some criticism, and an allegation of error is assigned upon that small part of the charge dealing with the subject of 'general' or 'specific' warnings and instructions set forth in defendant's seventh reason, namely:

" 'But I charge you, gentlemen of the jury, that mere general warning as to the danger to be apprehended from the use of dynamite would not be sufficient. It must be some specific warning and instruction as to the exact use of the dynamite that was to be placed in these holes that would satisfy the requirements of the law as to the giving of notice or warning.'

"I approve the above even standing alone. Taken in connection with the remainder of what was said by the court on the same subject, and the illustration given, it is fair and correct in my judgment. The jury was also charged that plaintiff had the burden of proving defendant's failure to adequately warn and instruct plaintiff in the use of explosives, and that his own 'wilful' negligence would be a complete defense, but that as to proving the later element the burden was upon the defendant. The jury must have been impressed from the language of the court that they should not consider for any purpose the subject of the workmen's compensation law, nor the question of an incompetent foreman, or 'quick' dynamite.

"In considering defendant's thirteenth reason it is well to remember that 'plug drilling,' is not at all like the work of placing, or 'pushing' these heavy charges of dynamite in the drill holes on the upper cliff. In defendant's fourteenth, fifteenth and sixteenth reasons on this motion its position seems to be that because the foreman's helper (Firsch) was not required to use the pole in pushing down a stick of dynamite until directed to do so by Cooley, that the latter's instruction, or command, 'Whenever the pole went down in the hole I asked it to go, asked him to let it down'—to 'use the tamping pole,' amounted to a sufficient instruction, or direction as to *how* to use it. I do not agree with this contention. The remaining requests to charge set forth in defendant's

motion were properly refused because they assume as established disputed questions of fact."

There is always danger in the handling of dynamite and workmen employed in using it, if not already aware of the danger, should be fully informed concerning it. This counsel for the defendant concede, but insist that the deceased knew all about it and that the admonition of Cooley to "handle the pole careful" was all that the occasion required. While Firsch was familiar with the use of dynamite in blasting, when but a small stick was used, we cannot say as a matter of law that he had such knowledge of the danger of tamping it in a deep hole with a large pole as relieved Cooley from the duty of giving him specific instructions as to the care to be used and the danger incident to a want of such care. No question of assumption of risk or contributory negligence is presented. While the case is a close one on the facts, we think it was for the jury and that it was properly submitted to them.

The following authorities cited by counsel for the plaintiff are instructive as to the duty of a master to warn a servant of dangers incident to the employment: *Smith* v. *Car Works*, 60 Mich. 501 (1 Am. St. Rep. 542) ; *Ribich* v. *Smelting Co.*, 123 Mich. 401 (48 L. R. A. 649, 81 Am. St. Rep. 215) ; *Adams* v. *Refrigerator Co.*, 160 Mich. 590 (27 L. R. A. [N. S.] 953, 19 Ann. Cas. 1152) ; *Hosking* v. *Mining Co.*, 163 Mich. 538; *Borkowski* v. *Radiator Co.*, 165 Mich. 266; Baldwin on Personal Injuries (2d Ed.), § 347 *et seq.;* 26 Cyc. pp. 1165, 1166; 18 R. C. L. pp. 565-567.

The judgment is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, and BIRD, JJ., concurred. CLARK, J., did not sit.